ACOSTA V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-258-CR

JULIO ALFONSO ACOSTA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

INTRODUCTION

Appellant was indicted for possession of a controlled substance, cocaine, of more than 400 grams with intent to deliver.  On January 9, 2003, the State proceeded on the lesser offense of possession of a controlled substance, cocaine, of 200 grams or more, but less than 400 grams, with intent to deliver and Appellant entered an open plea of guilty to the trial court.  On May 28, 2003, the trial court conducted a sentencing hearing and sentenced Appellant to twenty-five years’ confinement.  Appellant filed a motion for new trial arguing his plea was involuntary due to ineffective assistance of counsel and violation of his Eighth Amendment rights.  The trial court conducted a hearing and denied Appellant’s motion for new trial.  In three issues, Appellant argues that:  (1) the trial court erred in denying his motion for new trial on the basis that his guilty plea was involuntary due to ineffective assistance of counsel; (2) his sentence violates his Eighth Amendment rights under the United States Constitution because his sentence is grossly disproportionate to the crime and inappropriate towards him; and (3) his sentence violates his Article I, Section 13 rights under the Texas Constitution because the sentence is grossly disproportionate to the crime and inappropriate towards him.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was arrested for attempting to sell a “kilo” of cocaine.
(footnote: 1) Testimony showed that Appellant’s brother-in-law introduced him to a man named Joe, whom Appellant was told was looking for a drug supplier. Testimony further showed that Appellant obtained the “kilo” of cocaine from a man he knew only as Pekachu.  Appellant testified that Pekachu gave him the cocaine and Appellant was supposed to meet him later at a predetermined location to deliver his money.  However, Appellant stated that he did not know anything about Pekachu, other than his phone number.  Appellant further testified that he went to Joe’s apartment after receiving the cocaine from Pekachu, Joe got into his car, exited, and Appellant was blocked in by Hurst police officers and arrested.  It was later learned that Joe was a confidential informant.  Appellant stated that once in custody he gave a written statement and signed a consent to search his home, where police recovered a stolen gun. 

Appellant entered an open plea of guilty to the trial court and was fully admonished orally and in writing.  Appellant answered affirmatively that he had an opportunity to discuss his case with his attorney, and he understood the range of punishment, the significance of his judicial confession, and that he was pleading guilty without a plea-bargain agreement.  After receiving a presentence investigation report, the trial court proceeded to sentencing on May 28, 2003. At the sentencing hearing, the trial court reminded Appellant of the charge against him and his plea of guilty on January 9, 2003.  At the sentencing hearing, Appellant testified that he rejected two plea-bargain agreements of fifteen and eight years because he was hoping the court would give him another chance to be with his family.  Appellant’s trial counsel asked the trial judge to consider placing Appellant on deferred adjudication or community supervision.  The trial court rejected Appellant’s request and sentenced him to twenty-five years’ confinement. 

Appellant filed motions for a new trial on July 2 and July 7, 2003.  In his motions, Appellant argued that he received ineffective assistance of counsel, which resulted in an involuntary plea of guilty, and that his sentence violated the Eighth Amendment as cruel and unusual punishment.  The trial court conducted a hearing on the motions for new trial on August 1 and August 8, 2003. 

HEARING ON MOTION FOR NEW TRIAL

Appellant’s trial counsel was the first to testify at the hearing on the motion for new trial.  Appellant’s trial counsel stated he was retained the day after Appellant’s arrest and began meeting with Appellant and soon learned the details of Appellant’s arrest and the involvement of the confidential informant.  Appellant’s trial counsel stated he first considered trying to federalize Appellant’s case because Appellant would face a lesser sentence, but that this would be contingent on Appellant being able to provide “substantial assistance” to the government.  According to Appellant’s trial counsel, Appellant told him not to talk to the federal prosecutor, stating “[t]his case is going to go away.” Appellant’s trial counsel stated Appellant “refused” to provide additional information and he thought Appellant “was not telling me the whole picture.”  Appellant’s trial counsel also testified that he wanted to investigate Appellant’s brother-in-law to determine his connection with Appellant’s arrest, but Appellant refused.  Appellant’s trial counsel recommended that they file a motion for an examining trial, but again Appellant refused.  Appellant’s trial counsel stated he believed Appellant refused the examining trial because he feared that his bond might have been set higher.  Appellant’s trial counsel stated that he also inquired into the details surrounding Appellant’s written statement and the consent to search, and although Appellant stated he was scared, he never disclosed that he was lied to or threatened by police.  

Appellant’s trial counsel stated that while representing Appellant, the State offered a plea bargain of fifteen years, but Appellant rejected the offer. Appellant’s trial counsel testified that he spoke again with the prosecutor and was able to get the State to reoffer a plea of fifteen years, however Appellant again rejected the offer. 

Appellant’s trial counsel testified that he filed a motion to suppress and a hearing was set for January 9, 2003.  Appellant’s trial counsel testified that the State did not provide him with the full name of the informant until he arrived for the hearing on the motion to suppress and he was unsure whether the prosecutor informed him that they did not know his whereabouts, but he speculated with Appellant that the State might not be able to locate the informant.  Appellant’s trial counsel said he recommended that they seek a continuance so he could fully investigate the informant before proceeding on the motion to suppress.  Appellant’s trial counsel testified he did not feel that he would be acting in his client’s best interests if he proceeded on the motion to suppress without first investigating the informant.  However, Appellant’s trial counsel stated he never told Appellant not to pursue the motion to suppress; rather Appellant’s trial counsel stated Appellant told him he did not want to pursue a continuance, but instead wanted to enter an open plea.  Appellant’s trial counsel stated he explained the dangers of entering an open plea of guilty and further explained that he believed Appellant would be facing a sentence between twenty-five and thirty-five years if he entered an open plea, especially since he learned that the trial judge tended to render harsh sentences.   

Additionally, Appellant’s trial counsel testified he negotiated with the prosecutor and was able to obtain a plea offer of eight years if Appellant accepted that day.  Appellant’s trial counsel testified that he believed this was a good offer and he encouraged Appellant to take it.  Appellant’s trial counsel testified that Appellant refused and Appellant told him “I don’t want to do a day in jail.”  Appellant’s trial counsel testified that ultimately Appellant went against his advice and entered an open plea of guilty. 

Appellant’s trial counsel stated that he believed that throughout his representation Appellant was relying on the “spiritual advice” of his godfather in making all of his decisions.  Appellant’s trial counsel stated that Appellant seemed to believe that the charges were just going to go away.  Appellant’s trial counsel also related the events of an encounter he had with Appellant and his godfather.  He stated that at one of the proceedings, Appellant and his godfather asked him if he thought the judge took his gavel with him at the end of the day.  Appellant’s trial counsel testified that he thought that Appellant’s godfather was going to take the gavel and use it in some sort of black magic ritual.  Appellant’s trial counsel stated he told both Appellant and his godfather not to do anything illegal and further told Appellant to keep his godfather away from him.   

Appellant’s trial counsel testified that he discussed every available option with Appellant regarding his case, including trying the case before the judge or a jury, pleading guilty to a jury and having the jury assess punishment, and entering an open plea.  Appellant’s trial counsel stated that Appellant told him he did not want to go before a jury at any point.  Additionally, Appellant’s trial counsel testified that the State was only willing to reduce the offense if Appellant entered a plea.  Appellant’s trial counsel stated that if Appellant entered an open plea to the lesser offense, the trial judge could consider community supervision or deferred adjudication, but he did tell Appellant that he wasn’t necessarily going to get either. 

Appellant’s trial counsel testified that he explained the plea papers to Appellant and Appellant indicated that he understood the paperwork.  Furthermore, Appellant’s trial counsel “absolutely” believed Appellant made his own decision freely and voluntarily to enter an open plea of guilty. 

The prosecutor assigned to the case was also called as a witness at the hearing on the motion for new trial.  She testified she thought she had informed Appellant’s trial counsel of the full name of the confidential informant about a week before the suppression hearing was set, but she could not specifically recall.  The prosecutor also testified that, although she learned the informant had moved and she had not attempted to locate him, she believed she could prove the State’s case without the informant based on the testimony of the police officers. 
  

The prosecutor further testified that on the day the suppression hearing was scheduled, Appellant’s trial counsel talked her into offering eight years.  She expressed that she made the offer to get rid of the case because she stated that Appellant’s trial counsel had repeatedly called her and she was tired of dealing with him.  Additionally, the prosecutor stated that she believed Appellant’s trial counsel had provided Appellant with good representation. 

Finally, Appellant was called to testify at the hearing on the motion for new trial.  Regarding the signing of his statement and the consent to search, Appellant testified that the officers told him to think how his family would suffer if he were to go to prison.  Appellant stated this made him think about his family and made him decide to provide his statement.  He also testified that he was told that officers were at his house and if he didn’t sign the consent to search “they were going to go anyway and pull down the door.”  Appellant stated his wife was pregnant at the time and he said the officers told him “she might lose the baby” and this was the reason he signed the consent to search. Appellant testified that he told his trial counsel that the officers had lied to him in order to obtain the statement and the consent to search and he stated that his trial counsel replied, “[T]hat’s their job, that’s what they’re supposed to do.” He testified that his trial counsel did not ask him how they lied to him; however, Appellant stated he did not tell his trial counsel what the officers had supposedly said to him. 

Appellant testified that his trial counsel never told him he had learned the full name of the informant, nor did he tell him he wanted to seek a continuance in order to investigate the informant.  Appellant stated that he would have agreed to a continuance if he had been told.  Furthermore, Appellant testified that he was interested in pursuing the motion to suppress and he did not know why a hearing had not been held, but he stated he assumed it was because the informant could not be located.  Appellant also testified that his trial counsel never told him the consequences to the State’s case if the informant could not be located.  Appellant stated that his trial counsel told him his only option was to accept the offer from the prosecutor and did not discuss any other options with him.  However, Appellant did testify that his trial counsel did advise him not to enter an open plea to the judge and Appellant further stated that it was his decision to enter an open plea.   

In addition, Appellant denied telling his trial counsel that the case was going to go away, but he stated that his trial counsel told him that he and his investigator were working to make the case go away.  Further, Appellant stated he was not relying on the advice of his godfather, but rather his godfather was merely providing moral support.  Appellant did not know where his trial counsel came to the idea that his godfather was going to perform black magic on the judge’s gavel.  Appellant denied telling his trial counsel to stay away from his brother-in-law and testified that although he told his trial counsel that he did not believe his brother-in-law had anything to do with his arrest or being set up by the informant, had his trial counsel given him a good reason to investigate his brother-in-law, he “most likely would’ve said yes.”  

Appellant testified that when he entered his plea, he signed two documents, only one of which he said he read.  He stated that he didn’t get to read the other one and his trial counsel did not read either document to him.  Appellant stated that he was told by his trial counsel to answer “yes” to the judge’s questions; however, Appellant didn’t testify he did not understand what was occurring and, to the contrary did state he understood that he was pleading guilty.  Appellant stated that he would not have entered an open plea of guilty that day if he had realized that they could have proceeded on the motion to suppress.  

At the conclusion of the hearing, the trial judge overruled Appellant’s motion for new trial, stating “we’ve got a swearing match between the attorney and your client.” 

INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Appellant argues that the trial court erred in overruling his motion for new trial because the record shows that he entered his guilty plea involuntarily due to ineffective assistance of counsel.  

A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion standard.  
Charles v. State
, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)
.  We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court’s decision was arbitrary or unreasonable.  
Id
.  We must view the evidence in the light most favorable to the trial court’s ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party.  
Id
.  Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court’s ruling.  
Id
.  At a hearing on a motion for new trial, the trial judge is the trier of fact and the sole judge of the credibility of the witnesses.  
Woodall v. State
, 77 S.W.3d 388, 393 (Tex. App.—Fort Worth 2002, pet. ref’d).

When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  
Ex parte Moody
, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).  
In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
 
v. State
, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  
Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Id
.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  
Id
.  Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective.  
Id
.

As detailed above, the testimony of Appellant and his trial counsel at the hearing on the motion for new trial was in sharp conflict.  In overruling the motion for new trial, the trial judge made it clear on the record that “we’ve got a swearing match between the attorney and your client.”  Thus, the trial judge, as the sole judge of the credibility of the witnesses, was free to disbelieve the assertions made by Appellant that formed the basis of his claim of ineffective assistance of counsel.  Additionally, the record confirms that Appellant was fully admonished orally and in writing when he entered his guilty plea, and he indicated that he understood the nature of the charges, the range of punishment, and that there was no plea-bargain agreement.  Moreover, Appellant acknowledged that he decided to enter an open plea of guilty against the advice of his trial counsel and he understood that he was pleading guilty to the charges against him.  A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily.  
Martinez v. State
, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).  Once an accused attests that he understands the nature of his plea and that it was voluntary, he has a heavy burden to prove on appeal that his plea was involuntary.  
McNeill v. State
, 991 S.W.2d 300, 302 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d, untimely filed).  

Based on our review of the record, we conclude that Appellant has failed to overcome the strong presumption that his trial counsel provided adequate assistance and that his plea was voluntarily entered.  Thus, we hold that the trial court did not abuse its discretion in overruling Appellant’s motion for new trial on Appellant’s ineffective assistance of counsel claim.  We overrule Appellant’s first issue.

PROPORTIONALITY OF SENTENCE

In his second and third issues, Appellant argues that his sentence violates both his Eighth Amendment rights under the United States Constitution and his Article I, Section 13 rights under the Texas Constitution because the sentence is grossly disproportionate to the crime and inappropriate to him. 

We first note that Appellant did not argue in his motion for new trial to the trial court that his rights under the Texas Constitution were violated.  Therefore, Appellant’s claim under the Texas Constitution has not been preserved for appeal.  
Tex. R. App. P.
 33.1(a); 
see
 
Rhoades v. State
, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that defendant waived any claim that his Article I, Section 13 rights under Texas Constitution were violated when no objection was lodged in trial court); 
Buster v. State
, 144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.) (holding that because the accused made no objections to the trial court regarding the issue of cruel and unusual punishment, he waived that issue with respect to any alleged violation of his rights under the Texas Constitution).  Therefore, we will turn our attention to Appellant’s Eighth Amendment claim.

In addressing his Eighth Amendment claim, Appellant admits that there is confusion in the law regarding whether the Eighth Amendment contains a proportionality guarantee after the United States Supreme Court decision in 
Harmelin v. Michigan
, 501 U.S. 957, 111 S. Ct. 2680 (1991).
(footnote: 2)  However, we have previously chosen to follow the United States Court of Appeals for the Fifth Circuit in applying a proportionality analysis in addressing Eighth Amendment proportionality complaints.
(footnote: 3)  
Moore v. State
, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref’d).  
In conducting a proportionality analysis, we must first make a threshold comparison of the gravity of the offense against the severity of the sentence.  
Id
.  We are to judge the gravity of the offense in light of the harm caused or threatened to the victim or society, and the culpability of the offender.  
Id
.  

In this case, Appellant was originally indicted for possession, with intent to deliver, of more than 400 grams of cocaine, but was ultimately allowed by the State to plead guilty to the lesser offense of possession, with intent to deliver, of 200 grams or more but less than 400 grams of cocaine.  The record reveals that the cocaine found in the possession of Appellant had a total weight of 976.74 grams.  The lesser offense to which Appellant pleaded guilty carried a punishment of imprisonment “for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000.”  
Tex. Health & Safety Code Ann.
 § 481.112(e) (Vernon 2003).  The trial court sentenced Appellant to twenty-five years’ confinement and no fine.  In sentencing Appellant, the trial judge remarked that “this offense is one that greatly disturbs the court” and “I’m alarmed because of the amount of substance involved.” 

Appellant argues that based on the record “[t]he trial court should have provided Appellant the opportunity for probation.”  He points to the fact that he has no prior felony convictions, he previously successfully completed probations for the misdemeanor offenses of terroristic threat and driving while license suspended, he accepted responsibility for his actions, and there was no evidence that he was a known drug dealer.   

We first note that there is no fundamental right to receive probation; it is within the discretion of the trial court to determine whether an individual defendant is entitled to probation.  
Speth v. State
, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1088 (2000); 
Flores v. State
, 904 S.W.2d 129, 130 (Tex. Crim. App. 1995), 
cert. denied
, 516 U.S. 1050 (1996)
.  Additionally, possession, with intent to deliver cocaine, especially in the amount in the possession of Appellant, is a very grave offense.  The greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater the harm to society.  
Smith v. State
, 737 S.W.2d 933, 938 (Tex. App.—Dallas 1987, pet. ref’d).  And as
 the San Antonio Court of Appeals recognized in 
Thomas v. State
, 

Delivery of cocaine, a controlled substance, known for its addictive powers, is a serious offense.  It is common knowledge that possession, use, and distribution of illegal drugs represents one of the greatest problems affecting the health and welfare of our population.  Studies clearly demonstrate the direct nexus between illegal drugs and crimes of violence.

916 S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.).

Furthermore, the twenty-five year sentence imposed on Appellant was well within, and toward the lower end, of the range of punishment set by the legislature.  Notably, we are also cognizant that the Supreme Court in 
Harmelin
 upheld the imposition of a mandatory life sentence, without the possibility of parole, for possession of more than 650 grams of cocaine, and without any consideration of mitigating factors, such as the fact that the defendant had no prior felony convictions.  501 U.S. 957, 994-96, 111 S. Ct. 2680, 2701-02.  Contrasted to 
Harmelin
, there is the possibility of parole in this case.  Therefore, given the gravity of the offense, we hold that Appellant’s sentence is not grossly disproportionate in violation of his Eighth Amendment rights.  Thus, Appellant’s second issue is overruled.

CONCLUSION

Having overruled Appellant’s first and second issues and concluding that his third issue was waived, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED:  March 3, 2005 

FOOTNOTES
1:
The record contains a lab report showing the total weight of the cocaine was 976.74 grams. 

2:
In 
Harmelin
, Justice Scalia, joined by Chief Justice Rehnquist, concluded that “the Eighth Amendment contains no proportionality guarantee.”  501 U.S. at 965, 111 S. Ct. at 2686.  Justice Kennedy, joined by Justices O’Connor and Souter, concluded that the Eighth Amendment “encompasses a narrow proportionality principle.”  
Id
. at 997, 111 S. Ct. 2702 (Kennedy, J., joined by O’Connor & Souter, JJ., concurring in part and concurring in judgment).  Justice White, joined by Justices Blackmun and Stevens, found that the Eighth Amendment does include a “proportionality principle.”  
Id
. at 1012, 111 S. Ct. 2710 (White, J., joined by Blackmun and Stevens, JJ., dissenting).

3:
In 
McGruder v. Puckett
, the Fifth Circuit Court of Appeals concluded that “disproportionality survives” based on a “head-count analysis” of the decision in 
Harmelin
.  954 F.2d 313, 316 (5th Cir.), 
cert. denied
, 506 U.S. 849 (1992).