

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00254-CR

EX PARTE RACHAEL ANN
SHERIDAN

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2010-2104-A

----------

### MEMORANDUM OPINION[1]

----------

In one issue, Appellant Rachael Ann Sheridan appeals the denial of her application for writ of habeas corpus.  *See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2015).  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

### I. Appellant's relationship and the underlying charges

Appellant testified that she fell in love with "Ryan Webb" and married him, only to discover that he had deceived her into believing he was someone he was not. As the record reveals, this was not a figurative claim. It was literally true.

To begin with, he was not Ryan Webb. His real name was Joshua Mitchell. And although the record is unclear as to his true occupation, he also was not a member of the "International Investigation Agency" (IIA), a "black ops," top-secret government agency, as he had claimed.

This much was revealed to Appellant on August 24, 2010, the night that Mitchell was arrested, after Plano police officers found guns, explosives, and bomb-making materials in the bed of the family pickup that Appellant, Mitchell, and their children occupied. Along with the firearms and ammunition the police officers discovered, they also found containers of "metal shavings and BBs, bottles of smokeless black powder, metal pipes with threaded ends, end caps for the pipes, several containers with unknown powders, 2 hollowed out grenades and a blasting cap." According to a police report, as the officers uncovered the explosives, Appellant's six-year-old daughter pointed to the bottles of gunpowder, told an officer, "[T]hose are my daddy's explosives," recalled how Mitchell had

once thrown them in a pool while she was present, and demonstrated how they had exploded by "thr[owing] up her hands as if she was showing an explosion."[2]

The Bureau of Alcohol, Tobacco, and Firearms (ATF) was called to the scene because of the nature of the items found. Police reports also indicate that at the time of his arrest Mitchell told the police that he worked for "Black Ops," did "top secret" work that he could not discuss, that he "had contacts around the world," and that he did "government work."

Appellant was not arrested at the scene but voluntarily went to the police department with her two children. After both she and her six-year-old provided statements to Beesley, Appellant's two children were placed in the custody of CPS. Appellant was charged with two counts of endangering a child, *see* Tex. Penal Code Ann. § 22.041(c) (West 2011), and placed in jail.[3] The Department of Family and Protective Services (the Department) also initiated proceedings to terminate the parental rights of Appellant and Mitchell, and on September 3, 2010, Appellant was provided a service plan to complete.

After it became apparent that Appellant could not successfully complete the requirements of her service plan to avoid the termination of her parental rights while incarcerated, Appellant and her attorney came up with a "plan" to get

---

[2]Later that evening, when asked by Child Protective Services (CPS) investigator Jamie Beesley what devices Mitchell had used to "blow things up," the child drew a picture of what appeared to be a grenade.

[3]According to Appellant, it was not until they were arrested that she learned Mitchell's name was not Ryan Webb.

her out of jail. First, they tried to get Appellant's bond reduced. But they were unsuccessful. Then they tried to find someone who could pay her bond. This proved unsuccessful as well. So, they tried to set a jury trial on the criminal charges as soon as possible.

According to Appellant, the first jury trial setting available was January 31, 2011, by which time she would have been in jail for five months without the ability to work on her service plan in the interim. Unsatisfied with the option of waiting in jail for a January 2011 trial, Appellant "instructed her attorney to work on a plea bargain that would get her out of jail as soon as possible."

On December 2, 2010, Appellant entered a plea of guilty, was convicted of both counts of endangering a child, and was sentenced to two years' confinement. The trial court suspended imposition of her sentence, however, and placed her on five years' community supervision. The plea paperwork signed by Appellant expressly stated that she had been advised of her rights, including being warned of the consequences of a guilty plea and her right to a jury trial, that her plea was "made freely and voluntarily and [was] not influenced by any consideration of fear or any persuasion or any delusive hope of pardon" and that the waivers, consents, agreements, and statements made in the paperwork had been explained to her by an attorney and were made "voluntarily, knowingly, and intelligently." Likewise, the judgment of conviction recited as follows:

Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea.

The plan worked. On September 26, 2011, the trial court terminated Mitchell's parental rights but did not terminate Appellant's, instead agreeing with the Department's recommendation to return the children to Appellant. And on June 26, 2013, the trial court granted early termination of Appellant's community supervision.

## II. Appellant's application for writ of habeas corpus

Appellant filed an application for writ of habeas corpus under article 11.072 in April 2016 seeking relief from her conviction for child endangerment. *See* Tex. Code Crim. Proc. Ann. art. 11.072. In it, she argued that she was innocent and that she pleaded guilty under duress "so that she could be released from jail more quickly than if she had awaited trial." In essence, Appellant argued that her inability to procure pretrial release from jail, when combined with the immediate need to begin working on the service plan to avoid termination of her parental rights and the impossibility of completing the service plan while incarcerated, created a circumstance of duress which led to her plea of guilt.

In Appellant's application for writ of habeas corpus, she placed the blame for the child endangerment charges on Mitchell. Appellant denied any knowledge that he had placed weapons and materials that could be used to construct an explosive device in the pickup. Appellant further pointed to the

5

following conclusion of law entered by the trial court in the termination proceeding:

> Clear and convincing evidence shows that no reasonable juror would have convicted [Appellant] of child endangerment in light of the overwhelming affirmative evidence of her innocence at trial. Clear and convincing evidence shows that termination of the parent-child relationship between [Appellant] and [her children] is not in the best interest of the children.

Appellant attached the complete findings of fact and conclusions of law entered in the termination proceeding to her application, as well as the judgment of conviction, an affidavit by the attorney ad litem for the children in the termination proceeding that expressed his opinion that Appellant "had no knowledge of the facts which brought the children into care, being that the father of the younger child was portraying himself as a 'Special Agent' and that he had duped not only [Appellant], but many law enforcement agencies," and the opinion of this court affirming the termination of Mitchell's parental rights.

## III. The State's response

In answering the application for writ of habeas corpus, the State argued that (1) Appellant did not show duress, but rather that she made a conscious choice to enter a plea of guilty to benefit her chances of avoiding termination of her parental rights, (2) Appellant did not present any new evidence in support of her argument that she was innocent of the endangerment charges, and (3) there was sufficient evidence to support Appellant's conviction. In support of its arguments, the State provided (a) the plea paperwork signed by Appellant, (b) a

6

police report from the night of Appellant and Mitchell's arrests, (c) the report of the detective that investigated the endangerment charges, and (d) the indictment of child endangerment charges against Appellant.

## IV. The trial court's denial

On May 6, 2016, the trial court denied Appellant's request for relief without an evidentiary hearing. The trial court adopted the State's proposed findings of fact and conclusions of law, which included the following findings:

1. Applicant judicially confessed and pleaded guilty to two counts of endangering a child in return for a sentence of two years' confinement probated for five years with no fine.

2. After she was indicted, Applicant and her criminal attorney came up with the following plan in order to try to start her services in her parental termination case: try to get a bond reduction; try to get someone to help her pay her bond; and then set the case for a jury trial.

3. Applicant was unable to reduce or post her bond and the first jury trial date was January 31, 2011.

4. Applicant claims the trial could not have started on that date, but provides no evidence supporting her assertion.

5. Applicant complains that she would have "lost precious time to work on her service plan," but provides no evidence that her parental rights would have been terminated had she been confined for five more months.

6. Applicant does not bring forth any newly discovered evidence—her statements in support of her application were known to her at the time she pleaded guilty.

7. On the night of the offense Applicant claimed there were no guns in the vehicle, then said they were in the glove box, but one gun was found in plain view and the other was in a backpack.

8. Applicant claims she did not know her husband J.M.'s real name until after she was arrested, but she admitted she previously saw a document with a different name for him, she admitted she knew his family had a different last name, and Applicant's mother thought J.M. was using a false name.

9. Applicant claimed she did not know of J.M.'s probation in North Carolina, first saying they had been together for three years, then saying they had been together for four years, but then admitted she might have met him just after he was released from incarceration in North Carolina.

10. Applicant considered herself and J.M. 'hobbyists,' knew J.M. was fascinated with gunpowder and homemade rockets, and testified that J.M. started 'amassing' the explosive materials found in the truck in the past six months.

11. Considering Applicant's knowledge of J.M.'s explosive materials, and considering she, J.M., and her two children were living a nomadic lifestyle, it is reasonable to believe that Applicant would have knowledge of J.M.'s explosives in the back of the truck.

12. Applicant's older daughter, A.S., was familiar with J.M.'s explosives that were in the back of the vehicle to the point she could identify them to law enforcement, and recalled witnessing J.M. set off an explosive in the backyard of their old house creating a 'boom' while Applicant was inside the house.

13. Applicant told Detective Salazar that she knew it was 'stupid' to drive around with the explosives in the back of the truck because it was dangerous and could explode.

14. Applicant consistently admitted that she at least knew that gunpowder, which is an explosive material, was in the vehicle.

Among its conclusions of law, the trial court concluded that (1) the application could be resolved through the exhibits, affidavits, and declarations offered by Appellant and the State and did not require a hearing, (2) Appellant's guilty plea was a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences," (3) Appellant appeared to

8

make a *Herrera*-type[4] claim of actual innocence but presented no newly discovered evidence, (4) Appellant did not show by clear and convincing evidence that no reasonable juror would have convicted her of child endangerment so as to support a claim of actual innocence, (5) "[t]he findings in the parental termination suit should have no bearing in this collateral attack on a criminal case in a different trial court," (6) nothing presented to the trial court nullified the presumption that Appellant's conviction was valid, and (7) Appellant had not carried her burden of proof to warrant relief.

## Discussion

### I. Standard of Review

In reviewing a trial court's denial of a habeas corpus application under article 11.072, we review the evidence in the light most favorable to the habeas court's ruling and afford great deference to the habeas court's findings of fact and conclusions of law that are supported by the record. *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd). This deferential review applies even when the findings are based on affidavits rather than live testimony. *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006). Absent an abuse of discretion, we must affirm a habeas court's decision to deny the relief requested in the habeas corpus application. *Mello*, 355 S.W.3d at 832.

---

[4]*See Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853 (1993). Appellant's brief denies having made any such claim of actual innocence based upon newly-discovered evidence. We therefore will not address any such claim.

9

## II. Trial court's failure to conduct a hearing

Article 11.072 provides that the trial court "*may* order affidavits, depositions, interrogatories, *or a hearing.*" Tex. Code Crim. Proc. Ann. art. 11.072 § 6(b) (emphasis added). We have previously held that nothing in article 11.072 *requires* the trial court to conduct a hearing. *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.); *see also Ex parte Gonzales*, No. 13-11-00135-CR, 2012 WL 2928924, at *2 (Tex. App.—Corpus Christi July 19, 2012, pet. ref'd) (mem. op., not designated for publication) (holding evidentiary hearing was not required in article 11.072 proceeding alleging that guilty plea was made involuntarily); *Ex parte Franklin*, 310 S.W.3d 918, 922–23 (Tex. App.—Beaumont 2010, no pet.) (collecting cases holding a hearing was not required in article 11.072 proceeding presenting a claim of ineffective assistance of counsel).[5] In so holding, we explained,

> While section 6(b) clearly indicates that in making its determination the trial court *may* order affidavits, depositions, interrogatories, or a hearing, it does not *require* that a trial court do so. *See* [Tex. Code Crim. Proc. Ann. art. 11.072 § 6(b)] In addition, we find nothing in article 11.072 prohibiting the trial court from considering evidence filed with the application or with the State's response. *See id.* art.

---

[5]Some of our sister courts have held that an evidentiary hearing is required under article 11.072 if the habeas applicant makes a claim of actual innocence on the basis of newly-discovered evidence. *See Ex parte Gonzalez*, 323 S.W.3d 557, 559 (Tex. App.—Waco 2010, pet. ref'd); *Franklin*, 310 S.W.3d 918 at 923 (holding additionally that a hearing is required for a claim of actual innocence if the trial judge considering the habeas application is not the same judge that presided over the original trial). This caselaw is inapplicable here as Appellant acknowledges that she did not make a claim of actual innocence based on newly-discovered evidence.

10

11.072. In that regard, section 7 of article 11.072 refers to the trial court's consideration of "documents attached to the application," albeit in determining if the application is frivolous, but that language combined with the permissive language found in section 6 leads us to conclude that the legislature did not intend to prohibit the trial court from considering such evidence without [a] hearing. *See id.* art. 11.072 §§ 6, 7.

*Cummins*, 169 S.W.3d at 757. Appellant has not persuaded us to reconsider our prior holding. Because the trial court did not abuse its discretion by not holding an evidentiary hearing, we overrule this part of Appellant's sole issue.

## III. Burden of proof

The trial court was presented with documents by both sides to consider in ruling on Appellant's application. In her brief, Appellant complains of the State's provision of "limited information from which the court could make a decision," and particularly its alleged failure to provide testimony from the termination proceeding "that validates Applicant's application for writ of habeas corpus." Assuming this general complaint constitutes an attempt on Appellant's part to raise this issue as an issue on appeal, Appellant's argument misconstrues the applicable burden.

Once the State presented evidence that Appellant was admonished in writing as to her rights and the consequences of her plea—which it did, in the form of the "Waiver of Jury" form and the "Waiver and Judicial Confession" form signed by Appellant—it made a prima facie showing that Appellant's guilty plea was entered knowingly and voluntarily. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). Thereafter, the burden—and a heavy one at that—

11

shifted to Appellant to defeat the presumption that her plea was made voluntarily. *See Acosta v. State*, 160 S.W.3d 204, 211 (Tex. App.—Fort Worth 2005, no pet.); *see also State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ("When a person attacks the validity of his prior guilty plea as that plea is reflected in the written judgment, he bears the burden of defeating the normal presumption that recitals in the written judgment are correct.").

The burden was not on the State to provide testimony from the termination proceeding. If Appellant believed such testimony would assist her in proving the involuntary nature of her plea, she bore the burden of producing it. And while she provided us with such testimony on appeal, she has offered no explanation for her failure to provide the trial court with this evidence. Absent "compelling and extraordinary circumstances" we cannot consider evidence that was not first submitted to the trial court. *See Ex parte Whisenant*, 443 S.W.3d 930, 932 (Tex. Crim. App. 2014) (holding that supplemental evidence supporting an article 11.07 application for writ of habeas corpus should be filed in the trial court, not the reviewing court).[6] Because Appellant has made no showing of compelling or extraordinary circumstance, we therefore decline to consider this evidence.

---

[6]*See also Ex parte Simpson*, 136 S.W.3d 660, 669 (Tex. Crim. App. 2004) (noting that although the reviewing court in a habeas proceeding "might have the implicit authority to consider evidentiary materials filed directly with [the reviewing court], normally the jurisprudential considerations of efficiency, effectiveness, and comity to the habeas court counsel against such consideration").

Assuming Appellant's complaint was properly raised and adequately briefed, we overrule this part of her sole issue.

## IV. Voluntariness of Plea

The remainder of Appellant's arguments attack the factual basis of individual findings by the trial court in broad terms and without support in the record or reference to applicable caselaw. Even assuming these arguments were adequately briefed, none of the evidence shows that Appellant pleaded guilty unknowingly or involuntarily—in fact, the evidence supports the opposite conclusion.

No doubt Appellant was in a predicament. If she did not timely complete her service plan, she risked termination of her parental rights. Continued incarceration would impair—perhaps prevent—her from completing the service plan. She had exhausted her options to obtain pretrial release. And although her case was set for trial in January, there was no guarantee that it would actually go to trial as scheduled. Appellant's options were limited and imperfect. But the evidence shows that she and her attorney considered her options, and she ultimately chose to plead guilty to the charges.

Appellant's decision was calculated to achieve the best result in a grim situation. The evidence shows that in reaching her decision, she considered all options and circumstances known to her at the time. The evidence also shows that her decision to plead guilty was made with awareness of the direct consequences of her plea. As the court of criminal appeals has explained,

13

> [A guilty plea] cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. This means that the defendant must have sufficient awareness of the relevant circumstances. The standard is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant.

*Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014) (internal citations omitted). Neither her circumstances nor her options were ideal, but the evidence shows that Appellant was aware of the possible ramifications of a guilty plea and that she made a voluntary and intelligent choice considering her options. *See Ex parte Palmberg*, 491 S.W.3d 804, 809 (Tex. Crim. App. 2016) ("The reality is that every defendant who enters a guilty plea does so with a proverbial roll of the dice.").

Viewing the evidence in the light most favorable to the trial court's determination, we hold that the trial court did not abuse its discretion by denying Appellant's application for writ of habeas corpus. *See, e.g.*, *Ex parte Parker*, No. 09-06-00077-CR, 2006 WL 1965666, at *5 (Tex. App.—Beaumont July 12, 2006, no pet.) (mem. op., not designated for publication) (holding appellant's allegations of duress caused by jail conditions and alleged harassment by immigration agent did not support involuntary plea claim); *Quintanilla v. State*, No. 04-00-00197-CR, 2001 WL 220054, at *2 (Tex. App.—San Antonio Mar. 7, 2001, pet. ref'd) (not designated for publication) (holding appellant did not show his plea was rendered involuntary by his fear of not being able to see his

14

daughter again or alleged duress imposed by attorney).  We therefore overrule the remainder of Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's denial of Appellant's application for writ of habeas corpus.

BONNIE SUDDERTH
JUSTICE

PANEL:  WALKER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 27, 2017