

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00023-CR

_____

TRACI RENE CAHILL, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1623108D

_____

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. BACKGROUND

A jury found appellant Traci Rene Cahill guilty of (1) aggravated robbery with a deadly weapon and (2) credit-card or debit-card abuse of the elderly. *See* Tex. Penal Code Ann. §§ 29.03, 32.31(d). After the punishment trial, the trial court sentenced Cahill to thirty years' imprisonment for the first offense and ten years' incarceration for the second. The trial court ordered that the two sentences would run concurrently.

## II. CAHILL'S POINT

In one point, Cahill contends that "[t]he sentence assessed is grossly disproportionate to the offense and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment." Cahill focuses on her thirty-year sentence for aggravated robbery with a deadly weapon and complains that a party to the offense—the person who actually used the deadly weapon (a taser)—received only a seventeen-year sentence.[1] We hold that Cahill has not preserved her complaint. We further hold that even if she had preserved her complaint, it has no merit.

## III. PRESERVATION

To preserve a complaint that a sentence is grossly disproportionate to the offense, the issue must be raised at the trial-court level. *Thomas v. State*, No. 08-17-

---

[1]Cahill does not challenge her ten-year sentence or her conviction for credit-card or debit-card abuse of the elderly.

00092-CR, 2017 WL 5898963, at *4 (Tex. App.—El Paso Nov. 30, 2017, no pet.) (not designated for publication); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *Acosta v. State*, 160 S.W.3d 204, 211 (Tex. App.—Fort Worth 2005, no pet.). This can be accomplished by (1) objecting at the punishment hearing, (2) objecting when the sentence is pronounced, or (3) raising the issue in a motion for new trial. *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *Thomas*, 2017 WL 5898963, at *4; *Hansana v. State*, No. 02-15-00119-CR, 2016 WL 741976, at *1 (Tex. App.—Fort Worth Feb. 25, 2016, no pet.) (mem. op., not designated for publication); *Kim*, 283 S.W.3d at 475.

Cahill neither object on Eighth Amendment grounds to her punishment when it was imposed nor raised Eighth Amendment grounds in a motion for new trial. Because Cahill did not raise her disproportionate-sentence claim in the trial court, she has failed to preserve error for appeal.

## IV. MERITS

Even if we were to analyze her appellate point, Cahill's complaint has no merit. *See Nance v. State*, Nos. 02-21-00157-CR, 02-21-00158-CR, 2022 WL 2526931, at *1 n.2 (Tex. App.—Fort Worth July 7, 2022, pet. ref'd) (mem. op., not designated for publication) (addressing excessive-punishment claim notwithstanding lack of preservation); *Fulton v. State*, No. 02-19-00227-CR, 2020 WL 3969851, at *2 (Tex. App.—Fort Worth June 11, 2020, no pet.) (mem. op., not designated for publication) (same); *Neeley v. State*, No. 02-14-00241-CR, 2015 WL 1967306, at *2 (Tex. App.—

3

Fort Worth Apr. 30, 2015, no pet.) (mem. op., not designated for publication) (same); *Brewer v. State*, No. 2-09-041-CR, 2010 WL 1137049, at *2 (Tex. App.—Fort Worth Mar. 25, 2010, no pet.) (mem. op., not designated for publication) (same); *Miller v. State*, No. 2-05-031-CR, 2006 WL 1791660, at *4 (Tex. App.—Fort Worth June 29, 2006, no pet.) (mem. op., not designated for publication) (same). *But see Crawford v. State*, No. 2-04-299-CR, 2005 WL 1477958, at *4 (Tex. App.—Fort Worth June 23, 2005, pet. ref'd) (per curiam) (mem. op., not designated for publication) (declining to address excessive-punishment claim when not preserved).

## A. APPLICABLE LAW

The Eighth Amendment prohibits cruel and unusual punishment, including extreme sentences that are grossly disproportionate to the crime. *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 2021 (2010). The Supreme Court cautioned, "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009 (1983), *questioned in part by Harmelin v. Michigan,* 501 U.S. 957, 965, 985–90, 111 S. Ct. 2680, 2686, 2696–99 (1991) (Scalia, J., joined by Rehnquist, C.J., in an opinion). "[T]he trial court may impose any punishment within the relevant statutory range." *Thomas*, 2017 WL 5898963, at *4 (citing *Von Schounmacher v. State*, 5 S.W.3d 221, 223 (Tex. Crim. App. 1999)).

Subject only to a very limited, exceedingly rare, gross-disproportionality review, a punishment that falls within the legislatively prescribed range and is based on the sentencer's informed normative judgment is unassailable on appeal. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006); *see also Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173 (2003) ("[T]he only relevant clearly established law . . . is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."). Under *Solem*, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. 463 U.S. at 292, 103 S. Ct. at 3011.

In light of the Supreme Court's decision in *Harmelin*, however, Texas courts and the Fifth Circuit Court of Appeals have modified the application of the *Solem* test to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See* 501 U.S. at 965, 985–90, 111 S. Ct. at 2686, 2696–99 (Scalia, J., joined by Rehnquist, C.J., in an opinion); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Fulton*, 2020 WL 3969851, at *3; *Medina v. State*, No. 12-19-00048-CR, 2020 WL 1443565, at *2 (Tex. App.—Tyler Mar. 25, 2020, no pet.) (mem. op., not designated for publication); *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd). When comparing the gravity of the offense to the severity of the sentence, courts must examine (1) the sentence's

severity in light of the harm caused or threatened to the victim or society, (2) the offender's culpability, and (3) the offender's prior adjudicated and unadjudicated offenses. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Fulton*, 2020 WL 3969851, at \*3. If this comparison leads to an inference of gross disproportionality—which should be a rare occurrence—only then should courts compare the defendant's sentence with (1) the sentences received by other offenders in the same jurisdiction and (2) the sentences imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *Fulton*, 2020 WL 3969851, at \*3.

## B. DISCUSSION

Cahill does not argue that her punishment falls outside the statutory range. She could not. Aggravated robbery with a deadly weapon is a first-degree felony punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.32, 29.03(b).

Rather, Cahill argues that her partner-in-crime Nakayla Wright—the person who tasered the victim—received only a seventeen-year sentence for the same

offense.[2]  We do not, however, reach this argument because we conclude that her

sentence was not grossly disproportionate to the offense that she committed.  *See*

*Simpson*, 488 S.W.3d at 323; *Fulton*, 2020 WL 3969851, at \*3.

One of the potential benefits of a plea bargain is that in exchange for a plea of

guilty, the defendant might receive a reduced charge, reduced sentence, or both.  *See*

*Shannon v. State*, 708 S.W.2d 850, 851 (Tex. Crim. App. 1986).  The record shows that

---

[2]We disagree with Cahill's premise that Wright received a seventeen-year sentence for this offense.  The record shows that Wright was placed on deferred-adjudication community supervision on August 12, 2019, for two offenses of robbery causing bodily injury, which were both lesser-included offenses of the indicted offenses—aggravated robbery with a deadly weapon.  The aggravated robbery at issue in this appeal occurred over three months later, on November 27, 2019.

The record then shows that on December 30, 2020, and January 27, 2021, respectively—after the November 27, 2019 aggravated robbery—Wright pleaded true to the State's petitions to adjudicate her guilty in the two other cases as part of plea bargains.  Wright was convicted of robbery by threats in both cases and, in both cases, sentenced to seventeen years' imprisonment with the two sentences to run concurrently.  Even if the November 27, 2019 offense was the basis of the State's petitions to proceed to an adjudication, double jeopardy never attached to the November 27, 2019 offense.  *See Ex parte Peralta*, 87 S.W.3d 642, 644–46 (Tex. App.—San Antonio 2002, no pet.) (reasoning that probation-revocation proceedings are not designed to punish a criminal but to determine whether probationer has violated conditions of parole; thus, double jeopardy does not apply to such proceedings); *Salinas v. State*, 1 S.W.3d 700, 701–702 (Tex. App.—Amarillo 1999, no pet.) (noting that neither probation nor parole revocation hearings constitute a stage of a criminal prosecution for double jeopardy purposes).  In short, Wright's two seventeen-year sentences were not for the November 27, 2019 offense.  The record does not show how the State dealt with Wright and the November 27, 2019 offense.  All we know is that defense counsel's trial reference to Wright's receiving a seventeen-year sentence despite being the person who used the taser (a reference with which the complainant agreed) is supported only by the adjudication judgments on her two earlier cases.

the State offered Cahill a twenty-five-year sentence in exchange for her plea of guilty. The State's twenty-five-year offer would act as an inducement to Cahill's pleading guilty only if she believed that the State could get a greater sentence if the case went to trial. The plea offer suggests that the State thought that it could. And in the end, it did.

The offense itself involved Cahill and Wright's robbing a seventy-one-year-old female in a parking lot.[3] Wright tased the victim three times in the back, causing her to fall to the ground. The victim had welts on her back from the tasing. The victim's four- or five-year-old niece was asleep in the victim's car when the tasing occurred. The victim remembered that Cahill shouted, "Get her purse, get her purse." The victim stated that Wright grabbed the purse, the getaway car pulled up, and "they zoomed on just like that, and I laid there."

The victim maintained that the robbery affected her health. After the robbery, the victim began fainting in her home because of a low heart rate, and eventually—four months after the event—she received a pacemaker. The victim also said that the robbery affected her mentally; she no longer went out shopping by herself.

The evidence also showed that Cahill had an extensive criminal record:

- A May 27, 2019 traffic stop in Benbrook, Texas, during which the police found Cahill in possession of false IDs.

---

[3]The offense involved a third person, Jason Simmons, who drove the getaway vehicle.

8

- An April 12, 2019 traffic stop in Benbrook, Texas, during which the police found Cahill in possession of marijuana and false IDs (including a false California driver's license). Cahill told the police that a friend had provided her with the false California license and employed her to make fraudulent returns to Walmart.

- A 2017 conviction in Tarrant County, Texas, for possession of a controlled substance (cocaine).

- A 2014 conviction in Tarrant County, Texas, for theft of property under $1,500 with two prior convictions.

- Three 2008 convictions in Tarrant County, Texas, for forgery by possession of a check with intent to pass.

- A 2003 conviction in Tarrant County, Texas, for unauthorized use of a motor vehicle for which Cahill received two years' probation, which was later revoked.

- A 1998 conviction in Tarrant County, Texas, for theft.

Cahill correctly notes that none of her prior criminal activity involved physical violence. But the aggravated robbery here did—tasing a seventy-one-year-old woman three times in the back. Other evidence showed that Cahill was fully aware that she was about to "hit a lick" with Wright and that Wright had a taser.

When initially interrogated, Cahill minimized her involvement. On the video of Cahill's interrogation, Cahill said that Wright was riding in the car with her and that Cahill did not know that Wright was going to tase the victim and steal her purse. Cahill related that Wright had jumped out of the car and said that she was going to ask the woman for change; Cahill then heard the woman screaming. Cahill described

9

Wright as a "really troubled kid" and commented that drugs had only added to Wright's struggles. Cahill denied knowing that Wright had a taser.

But Cahill's Facebook messaging told a different story. On the morning before the robbery, Cahill messaged someone named Keon, "I'm bout to hit a lick u want in." Detective Ron Martin said that to "hit a lick" meant "to rob someone, steal something, something in that nature."

Later, Cahill messaged Keon again, saying "My homegirl and her dude got a razor, we bout to get a trick." A rational factfinder could have reasonably deduced that the referenced "homegirl" was Wright, because the two women participated in the robbery together.

Regarding the reference to a "razor," the State elicited testimony that the letters R and T are next to each other on a keyboard. Thus, Cahill might have intended to type "tazor" rather than "razor." Based on a possible typo, a rational factfinder could have reasonably deduced that the reference to a "razor" was intended to actually mean a taser.

And regarding the "trick," Detective Ron Martin said that a "trick" could be a crime. It depended, however, on the context.

Cahill continued in her Facebook message, "I want that bag[.] I'm tired of being broke." By "bag," a rational factfinder could have reasonably inferred that Cahill was referring to a purse.

10

After the robbery, Cahill messaged that her efforts had been successful:

I told u first thing this morning come with me and u didn't want to. And I did do something just not what tf I wanted to do. And how tf u gonna get mad at what I got in my mf pocket when u have no clue what I got. I got enough to pay what I need to pay and a lil extra and that's really all that matters.

Accordingly, although Cahill had not engaged in violent offenses before, her messaging showed that her behavior had escalated to violence.

And then there is the matter of Cahill's absconding during her trial on guilt–innocence. Under the pretext of having to go to the bathroom, Cahill violated the court's order not to leave the courtroom. Cahill proceeded to leave the courthouse. Police arrested Cahill twelve days later in her apartment. The police were required to obtain a search warrant to effectuate this arrest because she refused to surrender herself.

At the punishment trial, the State asked for a thirty-five-year sentence. Despite the State's request for thirty-five years, the trial court assessed a thirty-year sentence.

On this record, we cannot hold that Cahill's thirty-year sentence for aggravated robbery with a deadly weapon is an extreme sentence that is grossly disproportionate to the crime. *See Graham*, 560 U.S. at 60, 130 S. Ct. at 2021.

## V. CONCLUSION

We overrule Cahill's sole issue and affirm the trial court's judgment.

11

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 23, 2022