

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00357-CR
No. 02-19-00358-CR
No. 02-19-00359-CR
No. 02-19-00360-CR
No. 02-19-00361-CR
No. 02-19-00362-CR
No. 02-19-00363-CR

———————————————

CARL LAWRENCE BOLAR A/K/A CARL L. BOLAR, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1510487D, 1515801D, 1515805D, 1515809D, 1529488D, 1555775D,
1563407D

Before Birdwell, Bassel, and Wallach, JJ.
Opinion by Justice Mike Wallach

**OPINION**

Carl Lawrence Bolar was sentenced to forty years' concurrent confinement for each of his seven felony convictions. In his sole complaint, Bolar contends that these seven sentences are grossly disproportionate to his crimes and thus constitute cruel and unusual punishment in violation of the Eighth Amendment. We disagree and affirm his convictions.

## I. Background

Over the course of just fifteen months, Bolar committed seven felonies: four drug offenses and three felonious attempts to avoid responsibility for the same.

### A. Crimes

The problems began with a late-night traffic stop in July 2017. Bolar was driving a vehicle near Van Horn Avenue in east Fort Worth and was stopped for failing to use a turn signal. Or, rather, two police officers attempted to stop Bolar's vehicle, but Bolar refused to pull over his car.[1] When Bolar finally pulled over, he had multiple loose pieces and plastic bags of crack cocaine in his lap. Although the officers could see the cocaine through Bolar's window, he nonetheless attempted to hide the drugs; Bolar kept the doors locked and the windows rolled up while he put some of the crack cocaine in his mouth and took a swig of his drink in an attempt to swallow the contraband. Finally, one

---

[1]As Bolar continued to drive, the front passenger tossed something out of the passenger-side window.

of the police officers broke Bolar's window and arrested him,[2] only to discover additional plastic bags of crack cocaine. In total, the officers seized more than twenty-three grams of cocaine. Bolar was subsequently indicted for (1) first-degree-felony possession of a controlled substance—cocaine—in an amount of four grams or more but less than two hundred grams, with the intent to deliver; (2) third-degree-felony evading arrest or detention with a vehicle; and (3) third-degree-felony tampering with physical evidence—cocaine—by chewing or swallowing it. *See* Tex. Health & Safety Code Ann. § 481.112(d); Tex. Penal Code Ann. §§ 37.09(a)(1), (c), 38.04(b)(2)(A).

Just over a month later, while out on bond, Bolar was found in possession of cocaine again. This time, Bolar was present at a "known narcotics house" on Van Horn Avenue when Fort Worth Narcotics Unit officers executed a search warrant at the home. Bolar had more than two grams of cocaine in his pants pocket and next to his foot. He was indicted for the fourth felony underlying this appeal: third-degree-felony possession of a controlled substance—cocaine—in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c). Although Bolar was released on bond, his bond was soon forfeited because he failed to appear for court.

Despite the bond forfeiture, despite the numerous warrants out for his arrest, and despite the mounting number of criminal charges against him, Bolar returned to the drug

---

[2]In addition to the offenses Bolar committed during the course of the traffic stop, he had five outstanding arrest warrants for offenses committed in Arlington and Grapevine. The five warrants stemmed from crimes other than those currently on appeal.

house on Van Horn Avenue. The Fort Worth Narcotics Unit executed yet another search warrant at the home due to continued reports of shootings, narcotics trafficking, and several related crimes at that location. Bolar fled out the back of the residence, and after the officers gave chase, Bolar hid under a truck on another street. Upon discovery, he had more than six grams of heroin in his pocket.[3] He was arrested for the drugs—as well as outstanding warrants—and indicted for the fifth felony underlying this appeal: second-degree-felony possession of heroin in an amount of four grams or more but less than two hundred grams. *See id.* § 481.115(d). As before, Bolar bonded out.

Again though, Bolar failed to appear for court. In fact, Bolar failed to appear the week one of his felony cases was set for trial.[4] Then, after his case was reset, he failed to appear a second time. Bolar's bond was forfeited, a warrant was issued for his arrest, and he was indicted for the sixth felony underlying this appeal: third-degree-felony bail jumping.[5] *See* Tex. Penal Code Ann. § 38.10(a), (f).

By then, Bolar had ten outstanding felony warrants for his arrest—some stemming from the crimes detailed above and others related to offenses not currently on

---

[3]In addition to the heroin, Bolar also had cocaine in his pocket. He was charged with state-jail-felony possession of a controlled substance—cocaine—under one gram and sentenced to two years' confinement prior to the convictions underlying this appeal. *See* Tex. Health & Safety Code Ann. § 481.115(b).

[4]The record is unclear as to which of Bolar's cases was set for trial the week he failed to appear.

[5]The felony bond relied upon for the bail-jumping offense corresponded to Bolar's charge for second-degree-felony possession of a controlled substance—heroin.

appeal. Two separate law enforcement units began searching for Bolar, with a third assisting in the execution of search warrants at his suspected locations. Several months later, law enforcement officers learned where Bolar was staying and—after conducting surveillance to confirm Bolar's presence—knocked on his apartment door. Bolar refused to open the door. The officers finally forced entry into the apartment and arrested Bolar.[6] In plain view on the kitchen counter, the officers discovered a bag containing nearly two grams of crack cocaine.[7] Elsewhere in the apartment, officers found several items commonly used to make, cut, and store crack cocaine.[8] Bolar was indicted for second-degree-felony possession of cocaine in an amount of one gram or more but less than four grams, with the intent to deliver—the seventh and final felony underlying this appeal. *See* Tex. Health & Safety Code Ann. § 481.112(c).

**B. Trial**

Bolar pleaded guilty to all seven felonies: (1) first-degree-felony possession of a controlled substance—cocaine—with the intent to deliver; (2) third-degree-felony evading arrest or detention with a vehicle; (3) third-degree-felony tampering with physical evidence—cocaine—by chewing or swallowing it; (4) third-degree-felony possession of a controlled substance—cocaine; (5) second-degree-felony possession of a

---

[6]Bolar was alone in the apartment at the time of his arrest.

[7]Officers also found a bag containing marijuana and an empty pistol magazine on the kitchen counter.

[8]Officers also found a loaded pistol with an extended magazine and ammunition.

controlled substance—heroin; (6) third-degree-felony bail jumping and failure to appear; and (7) second-degree-felony possession of a controlled substance—cocaine—with the intent to deliver. His punishments were enhanced under Texas's habitual-offender statute based on Bolar's prior felony convictions for (1) aggravated robbery with a deadly weapon, adjudicated in 2004, and (2) retaliation, adjudicated in 1998. *See* Tex. Penal Code Ann. § 12.42(d). Bolar pleaded true to the enhancement allegations. The enhancements increased the statutory ranges of punishment for each of Bolar's seven felonies to "life, or . . . any term of not more than 99 years or less than 25 years." *Id.*

Punishment was to the court and involved only three witnesses: an officer with the City of Fort Worth Narcotics Unit (Officer Jones), an officer with the Fort Worth Gang Section (Officer Costa), and an investigator for the Tarrant County District Attorney's Office (Investigator Blaisdell). All three witnesses testified for the State and confirmed that the Van Horn residence Bolar frequented was a "known narcotics house" at which "[n]arcotics transactions, sales, distribution, along with a lot of known prostitution" occurred. Officer Jones stated that law enforcement had surveilled the Van Horn house and executed "numerous" search warrants at the location and that Bolar was identified as "the source of the narcotics being distributed from there"—specifically, the crack cocaine and heroin. Officer Costa, in turn, testified that Bolar was a member of a gang known as the Eastside 4x3 Crips, and the officer explained the significance of photographs depicting Bolar's gang-related tattoos, clothing, associations, and hand

signals. Finally, Investigator Blaisdell testified regarding Bolar's failure to appear in court and described the labor-intensive manhunt to find him.

After hearing this punishment evidence and reviewing Bolar's presentencing investigation (PSI) report, the trial court sentenced Bolar to forty years' confinement for each of his seven offenses, with the sentences running concurrently. Bolar timely filed and presented a motion for new trial contending, among other things, that his sentences were grossly disproportionate to his offenses. *See* Tex. R. App. P. 21.4, 21.6; *see also Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (discussing preservation requirements for Eighth Amendment challenge). The motion was denied by operation of law without a hearing. *See* Tex. R. App. P. 21.8(a), (c).

## II. Discussion

Bolar raises a single point on appeal: he claims that his forty-year sentences are grossly disproportionate to his offenses in violation of the Eighth Amendment.[9]

### A. Applicable Law

The Eighth Amendment—made applicable to the states through the Fourteenth Amendment—prohibits the imposition of "cruel and unusual punishments."[10] U.S. Const. amends. VIII, XIV; *Graham v. Florida*, 560 U.S. 48, 58–60, 130 S. Ct. 2011, 2021–

---

[9]Bolar's Eighth Amendment claim implicitly challenges the trial court's failure to grant him a new trial on the same basis. We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).

[10]Bolar does not allege that his sentences violate the prohibition against cruel and unusual punishments in the Texas Constitution. *See* Tex. Const. art. I, § 13.

22 (2010); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Generally, if a sentence is "within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, [it] is not excessive, cruel, or unusual." *Simpson*, 488 S.W.3d at 323. However, a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense.[11] *Graham*, 560 U.S. at 59–60, 130 S. Ct. at 2021–22; *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment);[12] *Simpson*, 488 S.W.3d at 322. Although the "precise contours [of the gross-disproportionality exception] are unclear," one thing is certain: it applies "only in the exceedingly rare or extreme case."[13] *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment); *Simpson*, 488 S.W.3d at 322–23.

---

[11]The Eighth Amendment also prohibits punishment that is "inherently barbaric," whether it is within the statutory limits or not. *Graham*, 560 U.S. at 59, 130 S. Ct. at 2021. Bolar does not assert that his punishment is inherently barbaric.

[12]*Harmelin* produced five separate opinions. *See generally Harmelin*, 501 U.S. at 961–1029, 111 S. Ct. at 2684–2720. Justice Kennedy's concurrence, which the Supreme Court subsequently described as "[t]he controlling opinion," modified and applied the then-current version of the gross-disproportionality test to Harmelin's sentence for a term of years. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Harmelin*, 501 U.S. at 996–1009, 111 S. Ct. at 2702–09 (Kennedy, J., concurring in part and concurring in judgment); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (adopting Justice Kennedy's modified gross-disproportionality test based on a "head-count" analysis of *Harmelin*).

[13]The United States Supreme Court has but twice held a noncapital sentence imposed on an adult to be constitutionally disproportionate—and only once in the last century. *See Simpson*, 488 S.W.3d at 323 (listing *Weems v. United States*, 217 U.S. 349, 30 S. Ct. 544 (1910), and *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001 (1983)).

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we begin with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *Ex parte Chavez*, 213 S.W.3d 320, 323–24, 324 n.20 (Tex. Crim. App. 2006). Assessing the gravity of the offense requires us to consider the defendant's culpability, the defendant's prior adjudicated and unadjudicated crimes, and the harm caused or threatened to the victim and to society. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) (per curiam) (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder*, 954 F.2d at 317.

In the rare case in which this threshold analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions.[14] *Simpson*, 488 S.W.3d at 323; *see also Solem*, 463 U.S. at 296–

---

[14]Admittedly, a court's reliance on precedent during the threshold step-one determination could be considered a comparison of the defendant's sentence with those of offenders in the same jurisdiction and in other jurisdictions. However, the few Supreme Court cases that have progressed to steps two and three have demonstrated that these steps require distinct analyses and that precedent is appropriately considered as part of step one. *See Solem*, 463 U.S. at 296–300, 103 S. Ct. at 3012–15; *see also Harmelin*, 501 U.S. at 998–1005, 111 S. Ct. at 2703–07 (Kennedy, J., concurring in part and concurring in judgment) (modifying *Solem* analysis and discussing precedent in threshold step-one determination).

300, 103 S. Ct. at 3012–15 (applying steps two and three). However, the appeal before us is not a rare case; Bolar's sentences are well within constitutional bounds considering the gravity of his offenses, so we need only address step one.

## B. Gravity of Bolar's Offenses

First, the gravity of Bolar's offenses was and is significant; he had high culpability, he had an extensive criminal history, and he posed a grave danger to society.

### 1. Culpability

Bolar's moral culpability—his blameworthiness for the offenses—was extremely high. In analyzing a defendant's culpability, we consider factors such as the defendant's age at the time of the offense, his motive and intent to commit the crime, his role as the primary actor or as a party to the offense, and his acceptance of responsibility. *See, e.g.*, *Graham*, 560 U.S. at 69, 130 S. Ct. at 2027 (considering juvenile's age and intent to commit the offense);[15] *Solem*, 463 U.S. at 293–94, 103 S. Ct. at 3011 (noting defendant's motive and intent to commit the offense); *see also, e.g.*, *Erickson v. State*, No. 02-19-00287-CR, 2020 WL 4907364, at *5 (Tex. App.—Fort Worth Aug. 20, 2020, pet. ref'd) (mem. op., not designated for publication) (noting acceptance of responsibility as well as "methodical and repetitive" nature of criminal conduct); *Fulton v. State*, No. 02-19-00227-CR, 2020 WL 3969851, at *4 (Tex. App.—Fort Worth June 11, 2020, no pet.) (mem.

---

[15]Although the *Graham* Court considered the defendant's culpability as part of its Eighth Amendment analysis, it did not do so within the *Harmelin* framework. *See* 560 U.S. at 61–62, 130 S. Ct. at 2022–23 (considering categorical Eighth Amendment challenge to life sentences without parole in nonhomicide juvenile cases).

op., not designated for publication) (discussing attempts to evade police, attempts to conceal contraband, and involvement in "drug underworld"); *Pizarro v. State*, Nos. 13-19-00053-CR, 13-19-00054-CR, & 13-19-00055-CR, 2019 WL 3820434, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2019, no pet.) (mem. op., not designated for publication) (considering role as primary actor and mental state); *Randall v. State*, 529 S.W.3d 566, 569 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (considering role in robberies and attempt to evade police); *Mitchell v. State*, No. 02-09-00374-CR, 2010 WL 4925023, at *3 (Tex. App.—Fort Worth Dec. 2, 2010, no pet.) (mem. op., not designated for publication) (noting failure to accept responsibility). Here, Bolar was an adult when he committed the seven felonies, and each offense was the result of Bolar's intentional or knowing conduct. *See* Tex. Health & Safety Code Ann. §§ 481.112(a), .115(a); Tex. Penal Code Ann. §§ 37.09(a)(1), 38.04(a), .10(a). Moreover, although he emphasizes that he "pl[eaded] guilty and accepted responsibility for [his seven] offenses," the record indicates that he did so only after his repeated efforts to evade arrest were thwarted by police persistence.

Bolar already had five warrants out for his arrest when he committed the first three felony offenses underlying this appeal. During that encounter with the police, he refused to pull over his car, refused to unlock his door, refused to roll down his window, and attempted to swallow some of the crack cocaine in his possession. Later, after committing additional drug offenses, he failed to appear for court. And when the police executed a no-knock search warrant at the Van Horn drug house, Bolar ran out the back

of the home, led the police on a chase, and hid under a truck. Then, when he was scheduled for trial, Bolar again failed to appear for court—twice. And when law enforcement learned of his location and knocked on his apartment door, he refused to open the door. These actions undermine Bolar's claim that he voluntarily took responsibility for his actions. Indeed, the very nature of three of the felonies underlying this appeal—evading arrest, evidence tampering, and bail jumping—demonstrates that Bolar was willing to commit additional felonies to avoid responsibility.

Consequently, despite pleading guilty, Bolar remained extremely culpable.

### 2. Criminal History

Moreover, Bolar had an extensive history of adjudicated and unadjudicated offenses, in addition to the seven felonies underlying this appeal. Bolar downplays his criminal history by arguing that the vast majority of his prior convictions occurred before the age of twenty-two, fifteen to twenty years before his current offenses.[16] He emphasizes that he has had only one felony conviction since the age of twenty-two, and the conviction was for possession of cocaine. Although factually accurate, this is a deceptively rosy portrayal of Bolar's record.

---

[16]Bolar was between the ages of thirty-six and thirty-seven when he committed the seven offenses from which he appeals.

Bolar has been charged with more than twenty offenses in his less than twenty-five years as an adult[17]—despite spending at least ten of those years in prison and many more subject to parole, probation, and bond conditions.[18] At age seventeen, Bolar committed felony retaliation and three counts of misdemeanor burglary of a vehicle.[19] He was sentenced to three years' confinement for the retaliation offense but was released on parole after approximately two years. Then, between the ages of twenty and twenty-two, Bolar was charged with misdemeanor assault causing bodily injury to a family member, felony unlawful possession of a firearm by a felon, and felony aggravated robbery.[20] Bolar was convicted of all three offenses and sentenced to one hundred twenty days' confinement for assault and ten years' confinement for unlawful possession

---

[17]The PSI also reflects numerous juvenile infractions. However, given the civil nature of juvenile cases and Bolar's subsequent criminal history as an adult, we need not consider Bolar's juvenile record.

[18]Bolar was sentenced to three years' confinement in November 1998 and was paroled in 2000. He was then sentenced to ten years' confinement in March 2004 but was paroled in November 2011.

[19]Bolar committed retaliation in January 1998, and he was initially placed on deferred adjudication community supervision. However, approximately one month later, Bolar violated the terms of his supervision by committing the three burglary-of-a-vehicle offenses.

[20]Bolar was also charged with a second count of unlawful possession of a firearm by a felon, but it appears from the record that Bolar's second count was dismissed as part of a plea bargain.

and for aggravated robbery.[21] Upon his release from prison in late 2011—at age thirty-one—he continued his pattern of criminal behavior. Bolar was arrested for (1) two counts of possession of marijuana under two ounces, (2) interference with an emergency call, (3) possession of a controlled substance—cocaine—under one gram, (4) assault causing bodily injury, and (5) assault by impeding the breath or circulation of a family member or member of the defendant's household. Although only one of these postprison offenses had produced a final felony conviction by the time of Bolar's punishment trial in this case, another felony—assault by impeding the breath or circulation of a family member or member of the defendant's household—remained pending.

Furthermore, in addition to Bolar's extensive history of charged offenses, the record contains evidence of countless criminal acts for which no charges were filed. Bolar admitted a long history of regular marijuana use and admitted to smoking "primos"—a combination of marijuana and crack cocaine—up to twice per day for the two-to-three-year period preceding his arrest in 2018. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (listing cocaine as part of Penalty Group 1), § 481.115(a) (prohibiting possession of a controlled substance listed in Penalty Group 1), § 481.121(a) (prohibiting possession of "a usable quantity of marihuana"). Furthermore, the evidence presented at Bolar's punishment trial indicated that he was a known drug dealer and an

_____

[21]For the offenses of aggravated robbery, unlawful possession of a firearm by a felon, and assault causing the bodily injury of a family member, Bolar's sentences were assessed within days of one another and ran concurrently.

active gang member. *See id.* § 481.112(a) (prohibiting the manufacturing, delivery, or possession with the intent to deliver of certain controlled substances, including cocaine); Tex. Penal Code Ann. § 71.02(a) (increasing the categorization of offenses committed as a member of a combination or criminal street gang). Unsurprisingly, given his extensive criminal history, his consistent drug use, and his association with a gang, Bolar's PSI concluded that he was "at High Risk of reoffending."[22]

### 3. Harm

Bolar's culpability and extensive criminal history also underscored the harm his crimes inflicted and the grave danger he posed to society.

Bolar claims that his seven current felonies were "non-violent, victimless offenses . . . stem[ming] from his recent decline into drug addiction." He emphasizes that "no one was physically harmed[;] [t]he 'victim' was the State of Texas, not an individual."[23]

---

[22]Bolar's likelihood of recidivism was assessed using the Texas Risk Assessment System.

[23]Bolar glosses over his numerous other adjudicated and unadjudicated offenses—some of which were violent. Notably, Bolar had a prior felony conviction for aggravated robbery with a deadly weapon, and at the time of his punishment trial, he had been indicted for assault causing bodily injury to a family member by impeding blood or breath. As discussed *infra* Section II.C, the trial court was entitled to assess Bolar's punishment "based not merely on [his] most recent offense[s] but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Rummel v. Estelle*, 445 U.S. 263, 284, 100 S. Ct. 1133, 1145 (1980).

First, even if we agreed with Bolar's characterization of his current offenses, "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel*, 445 U.S. at 275, 100 S. Ct. at 1140; *see also Collins v. State*, No. 02-18-00449-CR, 2019 WL 4126612, at *4–5 (Tex. App.—Fort Worth Aug. 30, 2019, no pet.) (mem. op., not designated for publication) (quoting *Rummel* and holding ninety-five-year sentence was not grossly disproportionate where habitual offender evaded arrest with a vehicle). The Texas Legislature's decision to classify Bolar's drug offenses as felonies reflects how "odious and socially threatening [it] believes drug use to be"—whether or not the crimes involve violence or target specific identifiable victims. *Harmelin*, 501 U.S. at 988, 111 S. Ct. at 2698 (opinion of Scalia, J.) (discussing legislative discretion to decide the gravity of offenses).

Regardless, we do not agree with Bolar's characterization of drug offenses as harmless, victimless acts. "Texas law classifies the distribution of illegal drugs as a grave harm to society" and numerous courts have recognized that the "[p]ossession, use, and distribution of illegal drugs represent[s] one of the greatest problems affecting the health and welfare of our population." *Id.* at 1002, 111 S. Ct. at 2705 (Kennedy, J., concurring in part and concurring in judgment) (cleaned up); *Fulton*, 2020 WL 3969851, at *3; *accord Acosta v. State*, 160 S.W.3d 204, 212 (Tex. App.—Fort Worth 2005, no pet.); *Thomas v. State*, 916 S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.). One reason illegal drugs pose such a threat is that they often contribute to other criminal activity; indeed,

16

"[s]tudies . . . demonstrate a direct nexus between illegal drugs and crimes of violence."[24] *Harmelin*, 501 U.S. at 1003, 111 S. Ct. at 2706 (Kennedy, J., concurring in part and concurring in judgment); *accord Puga v. State*, 916 S.W.2d 547, 550 (Tex. App.—San Antonio 1996, no pet.). And "[t]he greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater the harm to society." *Acosta*, 160 S.W.3d at 212.

Consequently, this court has repeatedly rejected attempts to minimize the gravity of drug offenses in the Eighth Amendment context. *See, e.g.*, *Fulton*, 2020 WL 3969851, at *3; *Stuer v. State*, No. 02-14-00243-CR, 2015 WL 1407750, at *3 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) (mem. op., not designated for publication); *Acosta*, 160 S.W.3d at 212–13. Our sister courts too, have rejected such attempts. *See, e.g.*, *Zavala v. State*, No. 13-09-188-CR, 2010 WL 1138445, at *2–3 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication); *Thomas*, 916 S.W.2d at 583–84; *Puga*, 916 S.W.2d at 550; *Robinson v. State*, 906 S.W.2d 534, 537 (Tex. App.—Tyler 1995, no pet.).

Here, Bolar possessed large amounts of cocaine on multiple occasions, under circumstances indicating his intent to sell the contraband to others. He was repeatedly

---

[24]In *Harmelin*, Justice Kennedy recognized that illegal drugs "relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture." 501 U.S. at 1002–03, 111 S. Ct. at 2706 (Kennedy, J., concurring in part and concurring in judgment).

surveilled and arrested at a known narcotics house, and he repeatedly returned to the narcotics house after his release on bond. The State even presented evidence that Bolar was the primary drug dealer providing the narcotics sold at the house. "[Bolar's] suggestion that his [drug] crime[s] w[ere] nonviolent and victimless . . . is [thus] false to the point of absurdity. To the contrary, [his] crime[s] threatened to cause grave harm to society." *Harmelin*, 501 U.S. at 1002, 111 S. Ct. at 2706 (Kennedy, J., concurring in part and concurring in judgment).

Given this harm, and given Bolar's high culpability and extensive criminal history, the overall gravity of his offenses was and is significant.

## C. Severity of Bolar's Sentences

Having concluded that Bolar's offenses are quite grave—he had high culpability, he had an extensive criminal history, and he inflicted and threatened significant harm— we next consider the proportional severity of Bolar's sentences. *See Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323. In doing so, we "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Fulton*, 2020 WL 3969851, at *4 (quoting *Solem*, 463 U.S. at 290, 103 S. Ct. at 3009). Here, Bolar's punishment was well within the statutory range set by the Texas Legislature, and the gravity of Bolar's offenses "br[ought] his sentence[s] within the constitutional boundaries [of proportionality]

established by . . . prior decisions." *Harmelin*, 501 U.S. at 1004, 111 S. Ct. at 2706 (Kennedy, J., concurring in part and concurring in judgment).

### 1. Statutory Range

First, each of Bolar's seven felonies were punished under Texas's habitual-offender statute, with a statutory punishment range from twenty-five to ninety-nine years' confinement, or life. *See* Tex. Penal Code Ann. § 12.42(d). Bolar's forty-year sentences were "less than one-half of the maximum sentence possible under th[is] range established by the legislature." *Thomas*, 916 S.W.2d at 582–84 (holding forty-year sentence for first-degree-felony delivery of cocaine was not grossly disproportionate where appellant was punished under habitual-offender statute). As the trial court accurately observed during sentencing, "40 is a lot closer to 25 than it is to 99."

Bolar acknowledges as much but attempts to reframe the discussion. He urges us to consider what the statutory punishment ranges for his offenses would have been had he not been punished as a habitual offender. However, accepting this invitation would require us to analyze Bolar's gross-disproportionality claim in a hypothetical world—a world in which he had a different criminal history, he was being punished for each of his seven felonies as isolated acts in separate vacuums, and he was therefore subject to different statutory ranges of punishment.[25] This we cannot do. *See Rummel*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45.

---

[25]Bolar acknowledges that, even under his suggested hypothetical reality, one of his seven convictions was a first-degree felony offense with a punishment range of five

When punishing habitual offenders, "the State's interest is not merely punishing the offense of conviction"; it also has an interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Ewing v. California*, 538 U.S. 11, 29, 123 S. Ct. 1179, 1190 (2003) (plurality op.); *see Rummel*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45; *see also Thomas*, 916 S.W.2d at 584 (recognizing, in Eighth Amendment context, that "[s]egregating a repeat offender from the society he victimizes is a permissible goal of a recidivist statute" and of the punishment assessed thereunder). Thus, "we must place on the scales not only [Bolar's] current felon[ies], but also his long history of felony recidivism"—and the habitual-offender punishment range corresponding to that history of recidivism. *Ewing*, 538 U.S. at 29, 123 S. Ct. at 1189–90 (plurality op.); *Simpson*, 488 S.W.3d at 323 (quoting *Ewing*). To do otherwise—to ignore the habitual-offender statute and to "treat [Bolar] in the same manner as [we] might treat him were this his first . . . offense"—would "fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144; *Simpson*, 488 S.W.3d at 323 (quoting *Ewing*, 538 U.S. at 29–30, 123 S. Ct. at 1189–90 (plurality op.)).

The Texas Legislature established the applicable statutory range of punishment for each of Bolar's seven felonies as twenty-five to ninety-nine years or life, and that is

---

to ninety-nine years independent of the habitual-offender statute. *See* Tex. Health & Safety Code Ann. § 481.112(d); Tex. Penal Code Ann. § 12.32(a).

the punishment range we consider. Bolar's sentences were at the lower end of that range—and thus no more severe than the legislature allowed.[26]

## 2. Precedent

Moreover, the United States Supreme Court has confirmed the constitutionality of sentences far more severe than Bolar's for offenses far less grave and far less numerous than his; the Court has upheld a life sentence for habitual theft, and it has upheld a life sentence for first-time narcotics possession.

---

[26]In a related argument, Bolar contends that the trial court failed to conduct an individualized determination of his proportional punishment for each offense. Bolar emphasizes his troubled childhood as a mitigating factor and points out that the trial court "impos[ed] the exact same sentence for separate and distinct offenses ranging from first- to third-degree felonies based on different incidents with different facts."

First, as explained *supra* Section II.C.1, the trial court was not required to compartmentalize its sentencing for each offense; rather, it was permitted to consider Bolar's criminal record—including the other felonies to which Bolar was pleading guilty—in assessing punishment on each count. *See Ewing*, 538 U.S. at 29–30, 123 S. Ct. at 1189–90 (plurality op.).

And, regardless, the Eighth Amendment "does not require strict proportionality between crime and sentence" nor does it "mandate individualized sentencing in [adult] non[]capital cases." *Graham*, 560 U.S. at 60, 130 S. Ct. at 2021 (quoting *Harmelin*, 501 U.S. at 1001, 111 S. Ct. at 2705 (Kennedy, J., concurring in part and concurring in judgment)); *Chavez*, 213 S.W.3d at 324 n.20; *Murkledove v. State*, 437 S.W.3d 17, 30 (Tex. App.—Fort Worth 2014, pet. ref'd). In fact, the United States Supreme Court has expressly refused to extend the Eighth Amendment's individualized-sentencing requirement to adult noncapital contexts. *Harmelin*, 501 U.S. at 995–96, 111 S. Ct. at 2701–02 (opinion of Scalia, J.) (Section IV, writing for the Court). Although Bolar repeatedly cites *Eddings v. Oklahoma* to support his complaint regarding individualized sentencing, *Eddings* was a death-penalty case, and "death differs from all other forms of criminal punishment, not in degree but in kind." *Id.* at 995–96, 111 S. Ct. at 2702 (opinion of Scalia, J.) (Section IV, writing for the Court) (quoting *Furman v. Georgia*, 408 U.S. 238, 306, 92 S. Ct. 2726, 2760 (1972) (Stewart, J., concurring)); *see also Eddings v. Oklahoma*, 455 U.S. 104, 105–06, 102 S. Ct. 869, 872 (1982).

In *Rummel v. Estelle*, the Court approved the constitutionality of a mandatory life sentence imposed under Texas's then-effective habitual-offender statute where the defendant had committed three instances of theft over approximately ten years, stealing a total of less than $250 in goods and services. 445 U.S. at 265–66, 284–85, 100 S. Ct. at 1134–35, 1144–45. The Court recognized that "[h]aving twice imprisoned [Rummel] for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Id.* at 284, 100 S. Ct. at 1144; *see also Ewing*, 538 U.S. at 28–31, 123 S. Ct. at 1189–90 (plurality op.) (holding that a mandatory sentence of twenty-five years to life was not grossly disproportionate where the sentence was imposed under California's habitual-offender statute after Ewing stole three golf clubs with an extensive criminal history).

Bolar's current and prior offenses were far more serious than those discussed in *Rummel*. In fact, unlike theft, "where the $100 [hot] check cause[s] $100 worth of harm, . . . it is rational to believe that . . . $80 in methamphetamine [or another controlled substance] pose[s] a danger of far more than $80 worth of harm." *Fulton*, 2020 WL 3969851, at *3. "Our entire society is negatively affected by criminal drug activities" such as Bolar's. *Robinson*, 906 S.W.2d at 537.

Indeed, the Supreme Court emphasized the threat narcotics pose to society when it upheld a life sentence for possession of a large quantity of cocaine in *Harmelin*. *Harmelin*, 501 U.S. at 994–96, 111 S. Ct. at 2701–02 (opinion of Scalia, J.) (Section IV, writing for the Court); *see id.* at 1002–04, 111 S. Ct. at 2705–07 (Kennedy, J., concurring

in part and concurring in judgment) (discussing narcotics). A plurality of the Court held that the appellant's imprisonment for life without the possibility of parole was not grossly disproportionate to his possession of more than six hundred grams of cocaine, even though the appellant had no prior felony convictions.[27] *Id.* at 996–1009, 111 S. Ct. at 2702–09 (Kennedy, J., concurring in part and concurring in judgment). Justice Kennedy explained "that the threat posed to the individual and society by possession of this large an amount of cocaine—in terms of violence, crime, and social displacement— is momentous enough to warrant the deterrence and retribution of a life sentence without parole."[28] *Id.* at 1003, 111 S. Ct. at 2706; *see also Hutto*, 454 U.S. at 372–75, 102 S. Ct. at 704–06 (holding defendant's convictions for distribution of marijuana and possession of marihuana with the intent to distribute were not grossly disproportionate to his two consecutive twenty-year sentences).

*Harmelin* is not an anomaly; this court too has repeatedly rejected Eighth Amendment challenges to lengthy prison sentences for drug offenses—even without the

---

[27]As discussed *supra* note 12, a majority of the *Harmelin* Court held that the sentence was constitutional, but Justice Scalia's opinion, joined by Chief Justice Rehnquist, held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin*, 501 U.S. at 965, 111 S. Ct. at 2686 (opinion of Scalia, J.).

[28]Justice Kennedy indicated that the legislature could rationally consider the possession of more than six hundred grams of cocaine to be just "as serious and violent as the crime of felony murder without specific intent to kill, a crime for which 'no sentence of imprisonment would be disproportionate.'" *See id.* at 1004, 111 S. Ct. at 2706 (Kennedy, J., concurring in part and concurring in judgment) (quoting *Solem*, 463 U.S. at 290 n.15, 103 S. Ct. at 3009 n.15).

habitual-offender statute in play.[29] *See, e.g., Vega v. State*, No. 2-05-299-CR, 2006 WL 3437978, at *1 (Tex. App.—Fort Worth Nov. 30, 2006, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding seventy-year sentence for possession of four hundred grams or more of cocaine with intent to deliver was not grossly disproportionate where punishment was not under habitual-offender statute and the State presented no evidence of other bad acts); *Caswell v. State*, No. 2-05-048-CR, 2006 WL 240267, at *2 (Tex. App.—Fort Worth Feb. 2, 2006, no pet.) (mem. op., not designated for publication) (holding ninety-nine-year sentence for first-degree-felony manufacture of methamphetamine was not grossly disproportionate without mention of any criminal history); *Acosta*, 160 S.W.3d at 212–13 (holding twenty-five-year sentence for possession of cocaine of two hundred grams or more but less than four hundred grams with the intent to deliver was not grossly disproportionate even though defendant had no prior felony convictions and had successfully completed community supervision for misdemeanor offenses).

---

[29]Our sister courts have held similarly. *See, e.g., Alvarez v. State*, 525 S.W.3d 890, 893 (Tex. App.—Eastland 2017, pet. ref'd) (holding forty-year sentence for first-degree-felony possession of methamphetamine with intent to deliver was not grossly disproportionate where appellant had criminal history but was not punished under habitual-offender statute); *Zavala*, 2010 WL 1138445, at *1–3 (holding fifty-year sentence for first-degree-felony possession of black-tar heroin with the intent to deliver was not grossly disproportionate even though appellant had no criminal history); *Puga*, 916 S.W.2d at 550 (holding sixty-five-year sentence for delivery of twenty-eight grams or more but less than two hundred grams of cocaine was not grossly disproportionate where appellant had drug-related criminal history but was not punished under habitual-offender statute).

There can thus be no realistic argument that Bolar's forty-year sentences were unconstitutionally disproportionate to his crimes. As in *Harmelin*, Bolar was convicted of possessing a significant amount of cocaine with the intent to deliver the substance to others. *See Harmelin*, 501 U.S. at 961, 111 S. Ct. at 2684 (opinion of Scalia, J.). However, in contrast to *Harmelin*, this was but one of Bolar's numerous felonies "place[d] on the scales" for the trial court's consideration at punishment. *Ewing*, 538 U.S. at 29, 123 S. Ct. at 1189–90 (plurality op.); *see Harmelin*, 501 U.S. at 994, 111 S. Ct. at 2701 (opinion of Scalia, J.) (Section IV, writing for the Court) (acknowledging that Harmelin had no prior felony convictions). Indeed, Bolar pleaded guilty to seven different felonies in this proceeding alone, bringing his total number of felony convictions to approximately eleven—with additional charges still pending. Even comparing Bolar's offenses to those in *Rummel*, where the habitual-offender statute was in play, Bolar's offenses were far more serious and there were far more of them. *See Rummel*, 445 U.S. at 265–66, 281, 100 S. Ct. at 1134–35, 1143 (detailing Rummel's three felonies and indicating that no other felonies were proven at sentencing). In fact, all seven felonies underlying this case were committed while Bolar had warrants out for his arrest based on previous crimes or while he was subject to bond conditions for pending felonies. The record thus indicates that Bolar was "simply unable to bring his conduct within the social norms prescribed by the criminal law of the State," and the habitual-offender statute itself reflected the legislature's desire and the trial court's authority to "plac[e] upon [Bolar] the

[corresponding] onus." *Id.* at 284, 100 S. Ct. at 1144. The trial court expressly referenced

this consideration when it announced Bolar's sentence:

> [I]t's just too bad for you that I'm having to render [justice] seven cases at a time because of [your] continued violation of the law . . . . It's your total disregard and disrespect of yourself, the people who care about you and the rules of our community when you just couldn't stay out of trouble and follow the rules being given all those opportunities.
>
> . . . .
>
> Five or six fewer cases, maybe we would have had a different story. Showing up for court and facing the music, maybe we would have had a different story, but unfortunately you had the pen and you got to write the script and I'm required to grade the test based on what's on paper and not what I wish it would have been.

Again, even though Bolar's offenses were more serious than those in *Rummel* and more

plentiful than those in *Harmelin*, his sentences were nowhere near as severe.[30]

Therefore, affording "substantial deference . . . to the discretion that trial courts

possess in sentencing convicted criminals," we cannot say that Bolar's forty-year,

concurrent prison terms were grossly disproportionate. *Solem*, 463 U.S. at 290, 103 S. Ct.

at 2009. Weighing the severity of his forty-year sentences against the gravity of his

offenses—including his high degree of culpability, his habitual and extensive history of

criminal conduct, and the harm his crimes inflicted and threat he posed to society—

---

[30]In *Harmelin* in particular, the appellant did not even have the possibility of parole—a possibility which could shorten Bolar's confinement considerably. *See Harmelin*, 501 U.S. at 961, 111 S. Ct. at 2684 (opinion of Scalia, J.); *see also Fulton*, 2020 WL 3969851, at *3 (noting availability of parole for similar drug-related offense in Eighth Amendment analysis).

Bolar's sentences are well within the bounds of the Eighth Amendment's proportionality guarantee.

## III. Conclusion

Having overruled Bolar's sole point on appeal, we affirm his sentences and corresponding judgments of conviction.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered: May 13, 2021