

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00127-CR
_____

TERRY LYNN WESTERMAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15470

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

After being caught on video selling methamphetamine to a woman who turned out to be a confidential informant, Appellant Terry Lynn Westerman pleaded guilty to delivery of controlled substance of more than four grams but less than two hundred grams and was sentenced to ninety-nine years' confinement. In his sole complaint, Westerman contends that this sentence is grossly disproportionate to the offense he committed and to similar offenses in the same jurisdiction and thus constitutes cruel and unusual punishment in violation of the Eighth Amendment. We disagree and affirm his conviction and sentence.

## I. Background

In May 2021, Jere Powell and Tracy Thurman were apprehended with 92 grams of methamphetamine in their possession. After Thurman claimed responsibility for the drugs, Investigator Gary Roberts with the Hood County Sheriff's Office (HCSO) offered Powell an opportunity to become a confidential informant. Powell contacted a woman named Michelle Taylor or Michelle Burris,[1] with whom she had smoked methamphetamine several times before, and told her she would like to purchase methamphetamine. HCSO followed Powell to Michelle's residence and recorded the transaction using Powell's phone. At the residence, Powell met Westerman, who offered to sell her ten grams of methamphetamine for $200. Powell handed

---

[1]According to Investigator Roberts, Michelle Taylor and Michelle Burris are the same person.

Westerman $200 in cash that HCSO had provided her and left Michelle's residence with the methamphetamine. She then drove directly to meet the officers who had arranged the drug transaction with her and gave them the methamphetamine.

Westerman was arrested and charged with delivery of a controlled substance of more than four grams but less than two hundred grams and possession of a controlled substance of four grams or more but less than two hundred grams.[2] *See* Tex. Health & Safety Code Ann. § 481.112(d), .115(c).

In a repeat-offender notice, the State further alleged that Westerman had been previously convicted of the felony offense of delivery of a controlled substance less than one gram (enhanced). *See* Tex. Penal Code Ann. § 12.42(c). Westerman pleaded guilty to the delivery charge and true to the repeat-offender notice and elected to have a jury assess his punishment.[3] The jury assessed his punishment at ninety-nine years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Westerman accordingly.[4]

---

[2]It appears from the record that Michelle was also indicted, but the record does not reflect the outcome of her case.

[3]Even though Westerman pleaded true to the repeat-offender notice, the State chose not to pursue the punishment enhancement in this case. Westerman thus faced the statutory range for an unenhanced first-degree felony of five to ninety-nine years or life. *See* Tex. Health & Safety Code Ann. § 481.112(d); Tex. Penal Code Ann. § 12.32(a).

[4]Upon the trial court's imposition of that sentence on Count One, the State moved to dismiss the possession charge (Count Two).

3

Westerman timely filed a motion for new trial contending, among other things, that his sentence is excessive and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Texas Constitution. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13; Tex. R. App. P. 21.4(a); *see also Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (discussing preservation requirements for Eighth Amendment challenge). The motion was denied by operation of law without a hearing. *See* Tex. R. App. P. 21.8(a), (c).

## II. Discussion

Westerman raises a single point on appeal involving alleged excessiveness and cruel and unusual punishment.[5]

## A. Applicable Law

We first note that we are not sure Westerman has preserved his appellate complaint for our review. To preserve a complaint for appellate review, an appellant must present the trial court with a timely request, objection, or motion stating the

---

[5]Westerman also challenges his sentence under the parallel provisions of the Texas Constitution. In *Cantu v. State*, the Texas Court of Criminal Appeals rejected an argument that the Texas Constitution should be interpreted in a more expansive manner than the federal constitution, finding "no significance in the difference between the Eighth Amendment's 'cruel and unusual' phrasing and the 'cruel *or* unusual' phrasing of Art. I, Sec. 13 of the Texas Constitution." 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). We are bound by the Texas Court of Criminal Appeals' authority in *Cantu*, and our Eighth Amendment analysis applies equally to Article I, Section 13 of the Texas Constitution. *See Coleman v. State*, No. 02-18-00471-CR, 2020 WL 241975, at *21 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.).

specific grounds for his desired ruling. Tex. R. App. P. 33.1(a)(1)(A); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). A defendant must raise a disproportionate-sentencing objection in a timely manner. *Sample v. State*, 405 S.W.3d 295, 303–04 (Tex. App.—Fort Worth 2013, pet. ref'd); *Kim*, 283 S.W.3d at 475.

When sentenced, Westerman voiced no objection. Westerman later filed a motion for new trial in which he complained that his sentence violated the United States and Texas Constitutions. But there is no showing that Westerman presented the motion to the judge or otherwise had a hearing. *See* Tex. R. App. P. 21.6 ("The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court."). The trial court's docket sheet does not reflect that Westerman presented his motion for new trial to the trial court. Accordingly, it is not clear whether Westerman preserved his Eighth Amendment claim. *See Emanuel v. State*, No. 02-16-00376-CR, 2018 WL 2142769, at *5 (Tex. App.—Fort Worth May 10, 2018, pet. ref'd) (mem. op., not designated for publication). Regardless, Westerman's argument is without merit.

The Eighth Amendment—which applies to the states through the Fourteenth Amendment—prohibits "cruel and unusual punishments." U.S. Const. amends. VIII, XIV; *Graham v. Florida*, 560 U.S. 48, 58–60, 130 S. Ct. 2011, 2021–22 (2010); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Generally, if a sentence is "within the statutory limits, including punishment enhanced pursuant to a habitual-

offender statute, [it] is not excessive, cruel, or unusual." *Simpson*, 488 S.W.3d at 323. But a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense.[6] *Graham*, 560 U.S. at 59–60, 130 S. Ct. at 2021–22; *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring);[7] *Simpson*, 488 S.W.3d at 322. Although the "precise contours [of the gross-disproportionality exception] are unclear," *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring), one thing is certain: it applies "only in the exceedingly rare or extreme case."[8] *Simpson*, 488 S.W.3d at 322–23.

To determine whether a noncapital sentence qualifies for this uncommon and

---

[6]The Eighth Amendment also prohibits punishment that is "inherently barbaric," whether it is within the statutory limits or not. *Graham*, 560 U.S. at 59, 130 S. Ct. at 2021. Westerman does not assert that his punishment is inherently barbaric.

[7]*Harmelin* produced five separate opinions. *See generally Harmelin*, 501 U.S. at 961–1029, 111 S. Ct. at 2684–2720. Justice Kennedy's concurrence, which the Supreme Court subsequently described as "[t]he controlling opinion," modified and applied the then-current version of the gross-disproportionality test to Harmelin's sentence for a term of years. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Harmelin*, 501 U.S. at 996–1009, 111 S. Ct. at 2702–09 (Kennedy, J., concurring); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (adopting Justice Kennedy's modified gross-disproportionality test based on a "head-count" analysis of *Harmelin*).

[8]The United States Supreme Court has but twice held a noncapital sentence imposed on an adult to be constitutionally disproportionate—and only once in the last century. *See Simpson*, 488 S.W.3d at 323 (listing *Weems v. United States*, 217 U.S. 349, 30 S. Ct. 544 (1910), and *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001 (1983)).

"somewhat amorphous" exception, we begin with a threshold analysis comparing the offense's gravity to the sentence's severity. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *Ex parte Chavez*, 213 S.W.3d 320, 323–24, 324 n.20 (Tex. Crim. App. 2006). Assessing the offense's gravity requires us to consider the defendant's culpability, the defendant's prior adjudicated and unadjudicated crimes, and the harm caused or threatened to the victim and to society. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance on the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) (per curiam) (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder*, 954 F.2d at 317 (holding sentence was not grossly disproportionate in light of both Supreme Court and Fifth Circuit precedent).

In the rare case in which this threshold first-step analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with sentences imposed for the same crime in other jurisdictions.[9] *Simpson*, 488 S.W.3d at

---

[9]Admittedly, a court's reliance on precedent during the step-one determination could be considered comparing the defendant's sentence with those of offenders in the same and in other jurisdictions. But the few Supreme Court cases that have progressed to steps two and three have demonstrated that these steps require distinct analyses and that precedent is appropriately considered as part of step one. *See Solem*, 463 U.S. at 296–300, 103 S. Ct. at 3012–15; *see also Harmelin*, 501 U.S. at 998–1005,

7

323; *see also Solem*, 463 U.S. at 296–300, 103 S. Ct. at 3012–15 (applying steps two and three). But the appeal before us is not such a case; Westerman's sentence is within constitutional bounds considering the gravity of his offense, so we need address only step one.

## B. Gravity of Westerman's Offenses

The gravity of Westerman's offenses was and is significant. He had high culpability, he had an extensive criminal history, and he posed a grave danger to society.

### 1. Culpability

"In analyzing a defendant's culpability, we consider factors such as the defendant's age at the time of the offense, his motive and intent to commit the crime, his role as the primary actor or as a party to the offense, and his acceptance of responsibility." *Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.). Here, Westerman was fifty-four years old when he committed the offense, an offense that was the result of his intentional or knowing conduct. *See* Tex. Health & Safety Code Ann. § 481.112(a). The video recording of Westerman selling Powell the drugs was entered into evidence and played for the jury, so there was no doubt about Westerman's role as the primary actor.

Westerman points out that he pleaded guilty and told the trial court, "I accept

111 S. Ct. at 2703–07 (Kennedy, J., concurring) (modifying *Solem* analysis and discussing precedent in threshold step-one determination).

full responsibility." But the record indicates that he initially pleaded not guilty, changing his mind on the second day of trial after his jury had been impaneled and sworn. And the jury heard testimony that, when investigators from HCSO came to apprehend Westerman, they observed him "in the river in a kayak or a canoe with a wig on trying to disguise his appearance. They requested him to come to the shore[,and h]e refused. [Instead, h]e turned the canoe or kayak that he was in around and fled down the river." Investigator Roberts testified that deputies from neighboring Somervell County took Westerman into custody on the other side of the river. These actions undermine Westerman's appellate contention that he willingly took responsibility for his role in delivering 10.01 grams of methamphetamine in this case. *See Bolar*, 625 S.W.3d at 667 (reasoning that, although defendant pleaded guilty, his "repeated efforts to evade arrest" undermined his claim that he voluntarily took responsibility for his actions).

"Consequently, despite pleading guilty, [Westerman] remained extremely culpable." *Id.*

## 2. Criminal History

"In weighing the gravity of [Westerman's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." *Ewing v. California*, 538 U.S. 11, 29, 123 S. Ct. 1179, 1189–90 (2003) (plurality op.); *see also Simpson*, 488 S.W.3d at 323 (quoting *Ewing*). Westerman's criminal history, as proved up at trial, included two of his prior convictions for burglary of a motor vehicle and

9

three different convictions for delivery of a controlled substance. Westerman argues that this criminal history "is minimal and include[s] only non-violent offenses." "Although factually accurate, this is a deceptively rosy portrayal" of Westerman's record. *Bolar*, 625 S.W.3d at 667.

All five of Westerman's prior convictions were for felony offenses,[10] and three were for delivery of methamphetamine—the same type of offense he committed in this case—evincing his long history as a drug dealer. Although the amount of methamphetamine in each of those delivery cases was less than one gram, this in no way mitigates the gravity of Westerman's latest offense. Rather, it shows that he not only continued to deal drugs after being convicted, imprisoned, and released but was dealing greater amounts. Westerman received prison sentences—of as little as five years in one case and as much as twenty years in another[11]—and every time he got out

---

[10]Westerman made a record at trial—and now argues on appeal—that burglary of a vehicle was a felony back when he committed it (twice) in the 1980s, *See* Act of May 23, 63d Leg., R.S., ch. 399, § 30.04, 1973 Tex. Gen. Laws 883, 927, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3634, but it is now a misdemeanor. *See* Tex. Pen. Code Ann. § 30.04(d). The fact that the legislature reclassified burglary of a vehicle as a lower-level offense after Westerman committed it has no bearing on our Eighth Amendment analysis. *See Castaneda v. State*, 135 S.W.3d 719, 724 (Tex. App.—Dallas 2003, no pet.) (rejecting argument that appellate court should consider defendant's punishment for burglary of a habitation, enhanced by two prior felony convictions, "as if not enhanced with" his prior burglary of vehicle conviction because burglary of a vehicle is now a class A misdemeanor).

[11]Westerman's five- and twenty-year sentences were for his two burglary offenses. He received a twelve-year sentence for his first delivery offense and a fifteen-year sentence on each of the next two.

of prison, he proceeded to commit another felony.

The jury was entitled to assess Westerman's punishment "based not merely on [his] most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Rummel v. Estelle*, 445 U.S. 263, 284, 100 S. Ct. 1133, 1145 (1980).

Thus, Westerman's extensive criminal history, when considered in conjunction with his culpability for the charged offense, supported a severe sentence for his crime.

### 3. Harm

Westerman's culpability and extensive criminal history also underscored the harm his crime threatened and the grave danger he posed to society.

Westerman argues that his current offense, like his prior offenses, is a non-violent one: "There were no allegations of deadly weapons used in the commission of the offense, and no violence or threats of violence occurred." But "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Id.* at 275, 100 S. Ct. at 1140; *see also Collins v. State*, No. 02-18-00449-CR, 2019 WL 4126612, at *4–5 (Tex. App.—Fort Worth Aug. 30, 2019, no pet.) (mem. op., not designated for publication) (quoting *Rummel* and holding ninety-five-year sentence was not grossly disproportionate where habitual offender evaded arrest with a vehicle). The Texas Legislature's decision to classify Westerman's drug offenses as felonies reflects how "odious and socially threatening [it] believes drug use to be"—whether or not the

11

crimes involve violence or target specific identifiable victims. *Harmelin*, 501 U.S. at 988, 111 S. Ct. at 2698 (opinion of Scalia, J.) (discussing legislative discretion to decide the gravity of offenses).

Westerman further argues that because his delivery of the methamphetamine to Powell "was a controlled purchase set up by the Street Crimes Unit, the controlled substance was maintained by law enforcement instead of being consumed by drug users on the street."[12] Again, Westerman makes a factually accurate contention that elides the gravity of his offense. "Texas law classifies the distribution of illegal drugs as a grave harm to society," and numerous courts have recognized that the "[p]ossession, use, and distribution of illegal drugs represent[s] one of the greatest problems affecting the health and welfare of our population." *Id.* at 1002, 111 S. Ct. at 2705 (Kennedy, J., concurring) (cleaned up); *Fulton v. State*, No. 02-19-00227-CR, 2020 WL 3969851, at *3 (Tex. App.—Fort Worth June 11, 2020, no pet.) (mem. op., not designated for publication); *accord Acosta v. State*, 160 S.W.3d 204, 212 (Tex. App.—Fort Worth 2005, no pet.); *Thomas v. State*, 916 S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.). One reason illegal drugs pose such a threat is that they often contribute to other criminal activity; indeed, "[s]tudies . . . demonstrate a direct

---

[12]This argument glosses over two critical facts: (1) Westerman did not know that his delivery of the methamphetamine to Powell was a controlled purchase at the time, and (2) he had no control over what she would do with the methamphetamine once she took it and left the house.

nexus between illegal drugs and crimes of violence."[13] *Harmelin*, 501 U.S. at 1003, 111 S. Ct. at 2706 (Kennedy, J., concurring); *accord Puga v. State*, 916 S.W.2d 547, 550 (Tex. App.—San Antonio 1996, no pet.). And "[t]he greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater the harm to society." *Acosta*, 160 S.W.3d at 212.

Consequently, we have repeatedly rejected attempts to minimize the gravity of drug offenses in the Eighth Amendment context. *See, e.g.*, *Fulton*, 2020 WL 3969851, at *3; *Stuer v. State*, No. 02-14-00243-CR, 2015 WL 1407750, at *3 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) (mem. op., not designated for publication); *Acosta*, 160 S.W.3d at 212–13. Our sister courts have also rejected such attempts. *See, e.g.*, *Zavala v. State*, No. 13-09-188-CR, 2010 WL 1138445, at *2–3 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication); *Thomas*, 916 S.W.2d at 583–84; *Puga*, 916 S.W.2d at 550; *Robinson v. State*, 906 S.W.2d 534, 537 (Tex. App.—Tyler 1995, no pet.).

Here, Investigator Roberts testified that the narcotics trade "has a nexus to nearly every crime that -- that we come across, whether it's . . . burglary . . . theft, assault, [or] even some of our DWIs" and that "you could tie narcotics into almost

---

[13]In *Harmelin*, Justice Kennedy recognized that illegal drugs "relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture." 501 U.S. at 1002–03, 111 S. Ct. at 2706 (Kennedy, J., concurring).

every case, whether it be child abuse or human trafficking or -- or anything of that nature." Additionally, both Roberts and Powell testified that a minor child was in the house where Westerman committed the offense. *See Caswell v. State*, No. 2-05-048-CR, 2006 WL 240267, at *2 (Tex. App.—Fort Worth Feb. 2, 2006, no pet.) (mem. op., not designated for publication) (in gross-disproportionality analysis, taking into account evidence that a minor child was present at defendant's residence where controlled substances and components of methamphetamine production were found by police). Therefore, what Westerman writes off as "the relatively low amount of harm caused or threatened by the offense" does little to mitigate the gravity of his crime. "To the contrary, [his] crime threatened to cause grave harm to society." *Harmelin*, 501 U.S. at 1002, 111 S. Ct. at 2706 (Kennedy, J., concurring).

Given this harm, and given Westerman's high culpability and extensive criminal history, the overall gravity of his offenses was and is significant.

## C. Severity of Westerman's Sentences

Having concluded that Westerman's offenses are grave, we next consider the proportional severity of his sentences. *See Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323. In doing so, we "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Fulton*, 2020 WL 3969851, at *4 (quoting *Solem*, 463 U.S. at 290, 103 S. Ct. at 3009). Here, Westerman's punishment was within the

statutory range, and the gravity of his offenses "br[ought] his sentence[s] within the constitutional boundaries [of proportionality] established by . . . prior decisions." *Harmelin*, 501 U.S. at 1004, 111 S. Ct. at 2706 (Kennedy, J., concurring).

### 1. Statutory Range

Generally, punishment within the statutory limits is not excessive, cruel, or unusual. *Hammer v. State*, 461 S.W.3d 301, 303–04 (Tex. App.—Fort Worth 2015, no pet.). The Texas Legislature established the applicable statutory range of punishment for Westerman's offense as five to ninety-nine years or life, and that is the punishment range we consider. *See* Tex. Health & Safety Code Ann. § 481.112(d); Tex. Penal Code Ann. § 12.32(a). Although Westerman received the maximum term of years under the statute, his sentence is "no more severe than the legislature allowed." *Bolar*, 625 S.W.3d at 671.

### 2. Precedent

Moreover, the United States Supreme Court has confirmed the constitutionality of sentences even more severe than Westerman's for offenses less grave than his; the Court has upheld a life sentence for habitual theft, and it has upheld a life sentence for first-time narcotics possession.

In *Rummel*, the Court approved the constitutionality of a mandatory life sentence imposed under Texas's then-effective habitual-offender statute where the defendant had committed three instances of theft over approximately ten years, stealing a total of less than $250 in goods and services. 445 U.S. at 265–66, 284–85,

15

100 S. Ct. at 1134–35, 1144–45. The Court recognized that "[h]aving twice imprisoned [Rummel] for felonies, Texas was entitled to place upon [him] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Id.* at 284, 100 S. Ct. at 1144; *see also Ewing*, 538 U.S. at 28–31, 123 S. Ct. at 1189–90 (plurality op.) (holding that a mandatory sentence of twenty-five years to life was not grossly disproportionate where the sentence was imposed under California's habitual-offender statute after Ewing, who had an extensive criminal history, stole three golf clubs).

Westerman's current and prior offenses were far more serious than those discussed in *Rummel.* In fact, unlike theft, "where the $100 [hot] check cause[s] $100 worth of harm, . . . it is rational to believe that . . . $80 in methamphetamine [or another controlled substance] pose[s] a danger of far more than $80 worth of harm." *Fulton,* 2020 WL 3969851, at *3. "Our entire society is negatively affected by criminal drug activities" such as Westerman's. *Robinson*, 906 S.W.2d at 537.

Indeed, the Supreme Court emphasized the threat narcotics pose to society when it upheld a life sentence for possession of a large quantity of cocaine. *Harmelin*, 501 U.S. at 994–96, 111 S. Ct. at 2701–02 (opinion of Scalia, J.) (Section IV, writing for the Court); *see id.* at 1002–04, 111 S. Ct. at 2705–07 (Kennedy, J., concurring) (discussing narcotics). A plurality of the Court held that the appellant's imprisonment for life without the possibility of parole was not grossly disproportionate to his possession of more than six hundred grams of cocaine, even though the appellant had

no prior felony convictions.[14] *Id.* at 996–1009, 111 S. Ct. at 2702–09 (Kennedy, J., concurring). Justice Kennedy explained "that the threat posed to the individual and society by possession of this large an amount of cocaine—in terms of violence, crime, and social displacement—is momentous enough to warrant the deterrence and retribution of a life sentence without parole."[15] *Id.* at 1003, 111 S. Ct. at 2706; *see also Hutto*, 454 U.S. at 372–75, 102 S. Ct. at 704–06 (holding that defendant's convictions for distribution of marijuana and possession of marijuana with the intent to distribute were not grossly disproportionate to his two consecutive twenty-year sentences).

And *Harmelin* is no anomaly; this court too has repeatedly rejected Eighth Amendment challenges to lengthy prison sentences for drug offenses—even without the habitual-offender statute in play. *See, e.g., Vega v. State*, No. 2-05-299-CR, 2006 WL 3437978, at *1 (Tex. App.—Fort Worth Nov. 30, 2006, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding that seventy-year sentence

---

[14]As discussed *supra* note 7, a majority of the *Harmelin* Court held that the sentence was constitutional, but Justice Scalia's opinion, joined by Chief Justice Rehnquist, held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin*, 501 U.S. at 965, 111 S. Ct. at 2686 (opinion of Scalia, J.).

[15]Justice Kennedy indicated that the legislature could rationally consider the possession of more than six hundred grams of cocaine to be just "as serious and violent as the crime of felony murder without specific intent to kill, a crime for which 'no sentence of imprisonment would be disproportionate.'" *See id.* at 1004, 111 S. Ct. at 2706 (Kennedy, J., concurring) (quoting *Solem*, 463 U.S. at 290 n.15, 103 S. Ct. at 3009 n.15).

for possession of four hundred grams or more of cocaine with intent to deliver was not grossly disproportionate where punishment was not under habitual-offender statute and the State presented no evidence of other bad acts); *Caswell*, 2006 WL 240267, at *2 (holding that ninety-nine-year sentence for first-degree-felony manufacture of methamphetamine was not grossly disproportionate, without mention of any criminal history).

And the Court of Criminal Appeals has held that a 1,500-year sentence for selling an undercover agent three capsules of heroin for $21 was neither cruel nor unusual under the federal or state constitutions. *Rodriquez v. State*, 509 S.W.2d 625, 626–27 (Tex. Crim. App. 1974). The statute under which that defendant was punished did not provide for a maximum term of years. *Id.* at 626. The punishment evidence at his trial established that he had two prior convictions—a federal conviction for the sale of marijuana and a state conviction for robbery. *Id.* Current Texas law classifies both heroin and methamphetamines in the same penalty group. *See* Tex. Health & Safety Code Ann. § 481.102(2), (6).

We thus reject Westerman's argument that his ninety-nine-year sentence was unconstitutionally disproportionate to his crime. Westerman was convicted of delivering—not just possessing—a significant amount of a dangerous and illegal drug. *Cf. Harmelin*, 501 U.S. at 961, 111 S. Ct. at 2684 (opinion of Scalia, J.) (defendant was convicted of possessing 672 grams of cocaine). And, in contrast to *Harmelin*, this was but one of Westerman's numerous felonies "place[d] on the scales" for the jury's

18

consideration at punishment. *Ewing*, 538 U.S. at 29, 123 S. Ct. at 1189–90 (plurality op.); *see Harmelin*, 501 U.S. at 994, 111 S. Ct. at 2701 (opinion of Scalia, J.) (Section IV, writing for the Court) (acknowledging that Harmelin had no prior felony convictions). Westerman had five prior felony convictions—three for delivery of methamphetamine. We noted in *Bolar* that drug offenses like Westerman's are "far more serious" than the theft and fraud offenses considered in *Rummel*. 625 S.W.3d at 674; *see Rummel*, 445 U.S. at 265–66, 281, 100 S. Ct. at 1134–35, 1143 (detailing Rummel's three felonies and indicating that no others were proved at sentencing). Having imprisoned him for felonies multiple times, "Texas was entitled to place upon [Westerman] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144.

Again, even though Westerman's offenses were more serious than those in *Rummel* and more plentiful than those in *Harmelin*, his sentence was not as severe.[16]

Westerman's punishment fell "within the legislatively prescribed range" and was "based upon the sentencer's informed normative judgment." *See Kim*, 283 S.W.3d at 475. Deferring to the legislature's and jury's normative judgments, and in light of

---

[16]In *Harmelin* in particular, the appellant did not even have the possibility of parole—a possibility that here could shorten Westerman's confinement considerably. *See Harmelin*, 501 U.S. at 961, 111 S. Ct. at 2684 (opinion of Scalia, J.); *see also Fulton*, 2020 WL 3969851, at *3 (noting availability of parole for similar drug-related offense in Eighth Amendment analysis).

Westerman's culpability, his criminal history, and the threat his criminal activity posed to his community, we hold that this is not one of the rare cases in which a sentence within the applicable range can be said to violate the Eighth Amendment. *See Fulton*, 2020 WL 3969851, at \*4. Weighing the severity of his ninety-nine-year sentence against the gravity of his offenses—including his high degree of culpability, his habitual and extensive history of criminal conduct, and the inherently harmful nature of his crimes and threat he posed to society—Westerman's sentence was within the bounds of the Eighth Amendment's proportionality guarantee.[17] We overrule his sole issue on appeal.

### III. Conclusion

Having overruled Westerman's sole issue on appeal, we affirm his sentence and corresponding judgment of conviction.

---

[17]Westerman complains that Powell, who possessed over nine times the amount of methamphetamine at issue here, "had her case wholly dismissed" and that Thurman, her co-defendant, "received a sentence of only 30 years in prison after claiming responsibility for the 92 grams of methamphetamine, despite having previously received a 99-year sentence on a drug charge out of Erath County." But because Westerman's sentence fell within the statutory range of five to ninety-nine years or life, we need not compare his sentence to sentences imposed on others. *Simpson*, 488 S.W.3d at 323–24.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 25, 2024