

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00300-CR
No. 02-24-00301-CR
No. 02-24-00302-CR
No. 02-24-00303-CR
No. 02-24-00304-CR

_____

HANNA SPRINGSTEAD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court Nos. CR23-0489, CR23-0490, CR23-0491, CR23-0492, CR23-0493

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Hanna Springstead challenges her sentences of fifty years' incarceration for possession with intent to deliver between 4 and 400 grams of psilocin and between 4 and 200 grams of methamphetamine.[1] *See* Tex. Health & Safety Code Ann. §§ 481.112(d), .113(d). In a single issue, Springstead asserts that her sentences are grossly disproportionate to her offenses. We will affirm.

## I. BACKGROUND

On the morning of January 6, 2023, police officers were dispatched to a one-vehicle crash on Highway 199 in Azle. When officers arrived on the scene, they found a gray Chevrolet Impala rolled over on its passenger side up against a barbed-wire fence approximately thirty to forty feet off the highway. Springstead was standing outside the vehicle, and she told the officers that her three children were still inside. Officers used a glass punch to remove the back windshield, and the children were removed from the vehicle uninjured.

To assist in removing the children, Corporal Christopher Javarone climbed inside the vehicle through the driver's side door. After helping to safely extract the children and exiting the vehicle himself, Corporal Javarone was alerted that he had

---

[1]As discussed below, Springstead was charged with—and pled guilty to—three additional offenses, but on appeal she challenges only the sentences that she received for her two possession-with-intent-to-deliver offenses.

something caught on his duty belt. Upon closer inspection, he realized that it was a baggie containing several "[c]ounterfeit fentanyl pills."

Once the vehicle was flipped back onto its wheels, an officer searched it and found an open bottle of Fireball Whisky. He also found a backpack between the front passenger seat and the center console that contained marijuana, a jar of pills, a notebook detailing drug transactions, $873 in cash, Springstead's driver's license, and two bank cards bearing Springstead's name.

Upon further examination of the backpack's contents, officers determined that it contained psilocin, MDMA, methamphetamine, marijuana, hydrocodone pills, and codeine pills. Lab testing eventually confirmed that Springstead possessed 0.535 grams of MDMA, 125.082 grams of methamphetamine, 34.337 grams of psilocin, 14.881 grams of hydrocodone, 1.134 grams of fentanyl, and 1.505 grams of codeine.

Because of the large quantity of drugs found in the vehicle and Springstead's failure of five different field sobriety tests, she was placed under arrest for possession of controlled substances and driving while intoxicated. Investigator Christopher Lockett with the Parker County Sheriff's Office interviewed Springstead after her arrest. Springstead told Investigator Lockett that she had been partying at her friend's house the night before the arrest and had taken her children with her. She said that while partying, she had had four or five shots of Fireball and had used MDMA and

marijuana. She also admitted to selling MDMA, psilocin, hydrocodone, THC pens, counterfeit Percocet pills,[2] and LSD.

Ultimately, Springstead was charged by indictment with five offenses: (1) possession of less than 1 gram of MDMA (Count One), (2) possession with intent to deliver between 4 and 400 grams of psilocin (Count Two), (3) possession with intent to deliver between 4 and 200 grams of methamphetamine (Count Three), (4) possession of 1 to 4 grams of fentanyl (Count Four), and (5) driving while intoxicated with a child passenger (Count Five).[3] *See* Tex. Health & Safety Code Ann. §§ 481.112(d), .113(d), .115(c), .116(b); Tex. Penal Code Ann. § 49.045(a). She pled guilty to all five counts without a plea agreement.[4] Following a bench trial on punishment, the trial court sentenced Springstead to two years in a state jail facility on

---

[2]The record suggests that these counterfeit Percocet pills contained fentanyl.

[3]The trial court established separate cause numbers for each of the five counts. Although Springstead filed a separate notice of appeal in each case, her sole appellate issue challenges only the punishments that she received for Counts Two and Three. To the extent that she intended to complain about the punishments that she received for the remaining offenses, she has forfeited any such complaints due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *Abernathy v. State*, Nos. 02-24-00001-CR, 02-24-00002-CR, 02-24-00003-CR, 02-24-00004-CR, 2024 WL 3978049, at *1 n.3 (Tex. App.—Fort Worth Aug. 29, 2024, no pet.) (mem. op., not designated for publication).

[4]Count Five contained a deadly-weapon enhancement, and Springstead pled "true" to that enhancement as well. Accordingly, the punishment range for Count Five was elevated to that of a third-degree felony. *See* Tex. Penal Code Ann. §§ 12.35(c)(1), 49.045(b); *Villanueva v. State*, No. 12-11-00039-CR, 2012 WL 4951127, at *4 (Tex. App.—Tyler Oct. 17, 2012, no pet.) (mem. op., not designated for publication).

Count One, fifty years' incarceration in the Texas Department of Criminal Justice (TDCJ) on Counts Two and Three, ten years' incarceration in the TDCJ on Count Four, and ten years' incarceration in the TDCJ plus a $10,000 fine on Count Five.[5] Springstead objected to these sentences on Eighth Amendment grounds and filed a motion for new trial, which was denied by operation of law. This appeal followed.

## II. DISCUSSION

In a single issue, Springstead argues that her sentences for Counts Two and Three—despite being well within the statutory limits[6]—are grossly disproportionate to the offenses. We disagree.

### A. Applicable Law

"Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Indeed, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex.

---

[5]The trial court ordered that Springstead's sentences would run concurrently.

[6]Counts Two and Three are first-degree felonies. *See* Tex. Health & Safety Code Ann. §§ 481.112(d), .113(d). Thus, the punishment range for these offenses is five to ninety-nine years or life in prison and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.32.

Crim. App. 1990)), and any sentence within the statutory limits is virtually "unassailable" on appeal provided that it is based upon the sentencer's informed normative judgment. *Id.* at 324. But a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Although the "precise contours [of the gross-disproportionality exception] are unclear," one thing is certain: it applies "only in the exceedingly rare or extreme case." *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment); *see also Simpson*, 488 S.W.3d at 322–23; *Chavez*, 213 S.W.3d at 323–24.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we engage in a three-step review beginning with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *see also Chavez*, 213 S.W.3d at 323–24. Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional

6

limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 705–06 (1982) (per curiam) (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder v. Puckett*, 954 F.2d 313, 317 (5th Cir. 1992) (holding sentence was not grossly-disproportionate in light of both the Supreme Court's and the Fifth Circuit's precedent). In the rare case in which this threshold analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm,* 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983) (applying steps two and three).

## B. Threshold Analysis

Springstead's gross-disproportionality argument does not pass the threshold test. Indeed, considering the factors set forth above, *see Simpson*, 488 S.W.3d at 323, we conclude that the sentences that Springstead received for Counts Two and Three are well within constitutional bounds.

First, the offenses underlying Springstead's challenged sentences caused or threatened significant harm to society. In her briefing, Springstead attempts to minimize her offenses' degree of harm by focusing on their nonviolent nature and by emphasizing the fact that no one—including her children—was actually harmed in the car wreck that led to the discovery of the illegal drugs. But as this court has recognized, "Texas law classifies the distribution of illegal drugs as a grave harm to

7

society." *Bolar v. State*, 625 S.W.3d 659, 669 (Tex. App.—Fort Worth 2021, no pet.) (quoting *Harmelin*, 501 U.S. at 1002, 111 S. Ct. at 2705 (Kennedy, J., concurring in part and concurring in judgment)). Indeed, "numerous courts have recognized that the '[p]ossession, use, and distribution of illegal drugs represent[s] one of the greatest problems affecting the health and welfare of our population.'" *Id.*; *see, e.g.*, *Zavala v. State*, No. 13-09-188-CR, 2010 WL 1138445, at *2–3 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication); *Thomas v. State*, 916 S.W.2d 578, 583–84 (Tex. App.—San Antonio 1996, no pet.). Further, "the greater the amount of illicit drugs possessed, the more likely use is widespread and delivery to others is intended, and the greater the harm to society." *Bolar*, 625 S.W.3d at 670 (quoting *Acosta v. State*, 160 S.W.3d 204, 212 (Tex. App.—Fort Worth 2005, no pet.)).

Here, based on the amount of drugs in Springstead's possession and her "sophisticated" ledger of drug transactions, Investigator Lockett concluded that she was "a prolific dealer." And the trial court noted during sentencing that he had "personally seen more drugs in [Springstead's] case than [he had] seen in the [twelve] years that [he had] been on the bench." Thus, the degree of harm caused or threatened by Springstead's possession-with-intent-to-deliver offenses was substantial. *See id.*

Second, Springstead's moral culpability—her blameworthiness for the offenses—was high. *See id.* at 666. "In analyzing a defendant's culpability, we consider

8

factors such as the defendant's age at the time of the offense, h[er] motive and intent to commit the crime, h[er] role as the primary actor or as a party to the offense, and h[er] acceptance of responsibility." *Id.* Having pled guilty, Springstead does not dispute that her moral culpability weighs against her disproportionality argument. *See Saravia v. State*, No. 02-22-00138-CR, 2023 WL 2805902, at *4 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication); *Wade v. State*, No. 02-21-00206-CR, 2023 WL 1859797, at *3 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication). And the record clearly shows that she possessed psilocin and methamphetamine with the intent to deliver it; that she was an adult at the time of the offenses; and that she was the primary actor, not an accomplice. *See Bolar*, 625 S.W.3d at 666. Further, although Springstead correctly points out that her guilty pleas—at least when viewed in isolation—showed acceptance of responsibility, the record also reflects that she repeatedly failed to comply with her bond conditions while awaiting trial and that her bond was ultimately revoked. These violations of her bond conditions undermine her claim that she accepted responsibility for her actions. *See U.S. v. Humphreys*, 108 F. App'x 329, 330 (6th Cir. 2004) (noting that appellant's illegal drug use and other violations of her bond conditions were "inconsistent with acceptance of responsibility"); *U.S. v. Red Horse*, 30 F. App'x 680, 680–81 (8th Cir. 2002) (holding that district court had "appropriately considered" appellant's bond violations when determining that her sentence should not be reduced based on acceptance of responsibility).

Finally, although Springstead does not have a prior criminal history, the offenses upon which her challenged prison sentences are based were not the only offenses associated with this incident. As noted, Springstead was also charged with—and pled guilty to—possessing two additional controlled substances and driving while intoxicated with a child passenger. Thus, this factor lessens her offenses' gravity only slightly, if at all. *See Abernathy*, 2024 WL 3978049, at *4.

Taking all of these factors together and affording proper deference to the legislature and the trial court to create and assess Springstead's punishment, we cannot say that her fifty-year sentences for Counts Two and Three, which are well within the statutory range for the charged offenses, give rise to an inference of disproportionality.[7] Accordingly, we overrule Springstead's sole issue.

## III. CONCLUSION

Having overruled Springstead's sole issue, we affirm the trial court's judgments.

---

[7]Because Springstead's disproportionality argument does not pass the threshold test, we need not compare her sentences to others for the same offenses in Texas and elsewhere. *See Bolar*, 625 S.W.3d at 666; *see also Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *5 (Tex. App.—Austin Oct. 28, 2021, no pet.) (mem. op., not designated for publication).

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025